1030

G. T. Sullins, Asst. U. S. Atty., of Ft. Smith, Ark. (W. N. Ivie, U. S. Atty., of Ft. Smith, Ark., and Edward S. Ragsdale, Ins. Atty., of Little Rock, Ark., on the brief), for the United States.

Charles T. Keller, of Springdale, Ark., and John Mayes, of Fayetteville, Ark., for appellee.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

KENYON, Circuit Judge.

This is an appeal from a judgment in a war risk insurance case brought some eleven years after the time appellee claims to have become totally and permanently disabled. Two questions are presented: (1) Lack of jurisdiction of the subject-matter, for the reason that no disagreement existed within the meaning of section 445, title 38 USCA; (2) that there was no substantial evidence to support the verdict of the jury.

In view of our conclusion as to the second proposition, we will omit discussion of the first.

From the testimony the facts appear as follows: Prior to entering the military service of the United States, April 25, 1918, appellee, Weeks, lived with his mother and brother on a rented farm of about forty acres in Oklahoma, on which he did considerable work. At St. Mihiel, France, while in the line of battle, he was, on September 13, 1918, shot four times in the right leg above his ankle; that pus formed and exuded from the limb during the time from the injury to his discharge on August 9, 1919. After leaving the Army, he did very little work except to make a small garden and do some hoeing; that his injured leg is two to two and one-fourth inches shorter than the other one; that it is painful to bear weight thereon, and that swelling occurs when he uses it; that he has nervousness and shortness of breath, and has a smothering sensation at night when he lies down. He was treated by Dr. Cooper in 1919, by Dr. Parker in 1922, and by Dr. Cisco in 1928. He did not remember all the hospitals he was in in France; was in a hospital in Muskogee, Okl., three days in October, 1926, and was in a hospital in Iowa at one time. When he was discharged from the Army he signed a statement which recited that his physical condition was good.

Appellant testified that, when he came from the Army, he was not qualified to follow any occupation except farming, and has not been able to farm since said discharge. He was married in October, 1919, and carried on with his brother some farming in 1922 and 1924. In 1925 and 1926 he furnished him "team and food stuff" and received one-half the crop, which was small. He did nothing in 1926. He testified, "In each of these years I have not hunted for any kind of work at all," and "What I have made farming and what the government has given me and the gardening have taken care of me." He did not make complaint of shortness of breath or nervousness when he claimed compensation; did not claim anything wrong with his heart until 1925. On September 20, 1920, he wrote Dr. Holt a letter in regard to his leg, in which he said, "my leg is all O. K." In his last claim to the government for compensation, in answer to the question, "Are you carrying Government insurance?" he answered, "No. Converted." His first claim for compensation was made while in the service. His application signed by him contained this: "11. Nature and extent of disability claimed. Bone injury of right tibia with 2 inch shortening. Thirty-three and one third per cent disabled."

Three laymen and two doctors testified in a general way that appellee was not able to follow continuously any substantially

gainful occupation, and that such condition was permanent. The premium paid on his insurance policy carried the same to October 1, 1919. Appellee apparently relies on two things as showing total permanent disability while the policy was alive: (a) The condition of his leg; (b) heart trouble. Of course, a shortening of a leg two to two and one-fourth inches is a serious permanent disability, but is not necessarily total disability. This was discussed in Hanagan v. United States (C. C. A. 7) 57 F.(2d) 860, 861. The court there said: "Notwithstanding appellant's great service and sacrifice, and the evident permanent injury to his leg, this case involves no matter of sentiment, but only of contract. It can scarcely be denied that there is in the record substantial evidence indicating that this man is capable of undertaking and continuously performing such work as a one-legged man can do, and therefore he was not and is not totally disabled as the contract provides must be the case to warrant recovery upon the certificate." The fact also that appellee did little work is not the test of total disability. This court said in United States v. Hairston, (C. C. A. 8) 55 F.(2d) 825: "The fact that an insured under these policies does some work is not sufficient to prove he is able to carry on a gainful occupation for any particular period of time, nor does the fact that he may not work demonstrate that he is unable to carry on such occupation. The test is the ability to carry on such gainful occupation continuously."

The only evidence in this case that could be claimed to afford any basis whatever for a judgment for appellee is the evidence of Drs. Parker, Cooper, and Cisco.

Dr. Parker testified he saw appellee in 1919; does not say whether it was before or after October 1st, or that he examined him at that time; that he was lame, having a gunshot wound between knee and ankle. (Appellee testifies he was first treated by Dr. Parker in 1922.) Dr. Parker's testimony seems rather vague. He says: "If the wound produced osteomyelitis, periostitis * * * the wounded leg would not bear constant use," etc. Also: "If I treated him after his discharge from the army I did not remove any pieces of bone," and then testified: "From my knowledge of his educational advantages and knowledge gained by an examination of his leg, observation and history of his case I do not believe he would be able to follow continuously any substantially gainful occupation. I believe his condition to be permanent." He testified: "It is not a fact that his greatest handicap is a short leg. I don't know that he

could run a truck farm, chicken farm or perform various other things that he could make money at." Dr. Parker does not testify as to any particular time when appellee was totally disabled, and does not attempt to place it within the time the policy was in effect. He does not testify he ever treated him or even made an examination of him.

Dr. Cooper testifies that on October 4, 1919, he saw appellee; that his physical condition was a broken leg and heart trouble; that he was suffering from compound fracture of the leg, and says, "If such condition would produce osteomyelitis or periostitis" he could not bear such weight on the limb as before the injury. He was asked if he examined his heart at any time he treated him. He testified he did, and found an irritable heart "with a rapid beat of the pulse and cardiac insufficiency," but he does not give the date of this examination.

In view of the fact that appellee made no complaint of heart trouble until 1925, the strong probability is that the examination Dr. Cooper speaks of was as late as 1925. Dr. Cooper testified: "Taking as a basis my knowledge of his condition gained by history of his case, examination and observation, I do not believe that he could follow continuously any substantially gainful occupation. He is not able to follow any gainful occupation. I observed that he was nervous. I believe his condition to be permanent. I have kept in touch with the history of his case for 12 years." In this Dr. Cooper does not attempt to relate the condition back to the time the policy was in force, but seems to be giving his opinion as of the time he was testifying.

Dr. Cisco first saw appellee in 1926. He made an examination of him then, and later in 1928. He did not examine his leg the first time, as other conditions seemed more important. He testified to serious heart trouble in 1928; that he had a major degree of hypertrophy of the heart; that it was organic and there could be no remedy. He also testified as follows:

"Examining the plaintiff I find that he has got an ankylosis of the ankle almost complete. It means that the joint is immovable. It is almost totally limited. It is a permanent condition. * * *

"He is permanently disqualified from following the occupation of farming. In my judgment because it takes a man that can walk the farm. In my judgment he would not be successful as a clerk if he had to walk. He could successfully do a gainful occupation that he could sit down to. Bookkeeping,

if had the ability, but the walking he would have to do to farm, he could not do. The walking probably would not have any effect on the limb. * * *

"Plaintiff could carry on truck raising and poultry raising. I don't know what he would have to do in a cotton mill. I don't say that he is totally disabled from all kinds of work. * * *

"He could do any type of work that there is not too much walking. Anything that would cause him to walk he should not do. He can do any kind of work that he can do sitting down. * * *

"He hasn't any occupation now. He is not disabled from some kind of work. He is 44% disabled from following farm work. I think he is totally disabled from following farm work. He could follow sedentary occupation, lazy man's job. * * *"

Dr. Cisco is giving his opinion apparently as of the time he is testifying. He knew nothing of appellee's condition on October 1, 1919.

There is no evidence in this record to show that appellee made any complaint of heart trouble prior to 1925. In his letter to Dr. Holt of September 20, 1920, he spoke only of his leg—nothing as to his heart. In his first application for compensation in August, 1919, he said nothing as to his heart, but did in the application of 1927. The constant complaint was as to the injury to his leg.

The government introduced medical testimony to the effect that because of his leg it was questionable whether he could farm, but that he could run a tractor, a stationary engine; could clerk in a store, drive a cab, be a cobbler, do dairying, do truck gardening, and other light work which did not require much walking, and that he could follow the occupation of an ordinary man afflicted as he was with a shortening of the leg. Certainly there was no evidence whatever to submit to the jury the question of heart disability while the policy was in force, and there was no substantial evidence to submit to the jury the question of total disability during the life of the policy because of the injury to his leg. He apparently was about right in his first application for compensation in claiming because of the limb's shortening a 33⅓ per cent. disability. As this soldier has suffered a permanent injury of a serious nature in the service of his country, his condition arouses sympathy. We are dealing, however, with a contract, and sympathy cannot take the place of essential facts. Quite in point here are the words of Judge Van Valkenburgh in United States v. Harth (C. C. A. 8) 61 F.(2d) 541, 546: "Appellee sustained a severe wound while in service on the field of battle. It is no doubt a serious handicap in the pursuit of a substantially gainful occupation. He is entitled to compensation commensurate with the disability he has suffered. If that he now receives is inadequate, the law provides opportunity for review, and for increase, if that is found to be warranted. * * * But we cannot approve recovery upon a contract of insurance, the express and crucial terms of which have obviously not been met." The record does not show the compensation paid him by the government, but evidently ample for him to live without attempting to do any work. Appellant's motion for an instructed verdict in its favor should have been sustained. The judgment is reversed, and the case remanded.

Reversed and remanded.