## THOMPSON v. UNITED STATES.
### No. 9689.

Circuit Court of Appeals, Eighth Circuit.
June 15, 1933.

Philo Hall, of Brookings, S. D. (C. G. Aaberg, of Brookings, S. D., on the brief), for appellant.

Byron S. Payne, Asst. U. S. Atty., of Pierre, S. D. (Olaf Eidem, U. S. Atty., and

E. D. Barron, Asst. U. S. Atty., both of Sioux Falls, S. D., on the brief), for the United States.

Before GARDNER, SANBORN, and BOOTH, Circuit Judges.

SANBORN, Circuit Judge.

The appellant will be referred to as the plaintiff. He brought this action upon a $10,000 policy of war risk insurance issued to him after his enlistment on February 24, 1918. Premiums were paid until February 21, 1920, when he was discharged from the service. On October 7, 1918, while in action, he was shot in the left leg below the knee. The bullet caused a compound, comminuted fracture of the tibia. An effort was made to save his leg. He was hospitalized; the leg was operated on; osteomyelitis set in. While the wound closed at times, it would not remain healed, and he was frequently obliged to return to government hospitals for medical and surgical treatment. It finally became necessary to amputate the leg some five inches below the knee. This was done on November 5, 1925. Following the operation the appellant had trouble with the stump and received further medical and surgical treatment. He was furnished with an artificial leg by the government, but he has been unable to use it with comfort. Its use causes the stump to break down and become sore, and causes him pain. Prior to the war he had been a farmer and, for a brief period, a street car conductor; he had little education; he was twenty-seven years old at the time of his enlistment. His frequent hospitalizations and the handicap of his injury have interfered with his carrying on successfully his prewar occupations as a farmer and street car conductor. He cannot do ordinary farm work. He took vocational training as a shoemaker, but did not make a success at that occupation.

He brought this action claiming that while his policy was in force he became totally and permanently disabled. This the government denied.

The case was tried to a jury, and at the close of the plaintiff's evidence the court granted a motion for a directed verdict in favor of the government upon the ground that there was no substantial evidence of total and permanent disability during the life of the plaintiff's policy. The plaintiff challenges this ruling of the court and also complains of the court's rulings upon objections to certain hypothetical questions.

The vital matter is whether the facts es-

tablished by the plaintiff's evidence, taking that view of it which is most favorable to him, would have justified the court in submitting the case to the jury. Asher v. United States (C. C. A. 8) 63 F.(2d) 20, 23.

As this court has frequently pointed out, the contingencies insured against, under the terms of a war risk policy, were death and total and permanent disability occurring while the policy was kept in force by the payment of premiums. One of the contingencies must have occurred during that period in order to mature the policy. The history of a disability subsequent to the lapse of the policy may show that such disability was either greater or less than it was recognized to be at the time of lapse, but conditions occurring subsequent to lapse cannot create any right of recovery under an expired policy; See Eggen v. United States (C. C. A. 8) 58 F.(2d) 616, 619; Proechel v. United States (C. C. A. 8) 59 F.(2d) 648, 652.

The subsequent history of the plaintiff's disability justifies the conclusion that conditions existed while his policy was in force which made it reasonably certain that his leg would have to be amputated. The conditions upon which his disability was based prior to the lapse of his policy were these: He had a compound, comminuted fracture of the tibia, with chronic osteomyelitis, which would necessitate the amputation of his leg between the ankle and the knee. If such disability was total and permanent, his policy had matured. If it was not a total and permanent disability, his policy lapsed.

The plaintiff's medical testimony indicated that, at the time of the trial, the stump of his leg was hypersensitive and that there was a small ulcer in the tissues over the bone. That the stump was hypersensitive and that this ulcer was present had no tendency to prove that the disability which existed at the time the plaintiff's policy lapsed was based upon conditions which then rendered it reasonably certain that if his leg was amputated the stump would be hypersensitive or would ulcerate, or that such conditions, if they did occur, following amputation, would continue throughout the plaintiff's life, or that any conditions would develop which would place him in a different class than other men who had suffered the loss of a left leg below the knee. There is no evidence that during the time his policy was in force the plaintiff had any other disability than that which was caused by the gunshot wound, and evidence to justify a finding that there was a reasonable certainty that other complications would develop if the leg were amputated is lacking. In fact, there is nothing on which to base a finding that the hypersensitiveness of the stump and the tendency to ulcerate is an incurable condition at this time. "The element of permanency and all the elements essential to make a case must be proved. They cannot be found by speculation, guess, or surmise." Proechel v. United States (C. C. A. 8) 59 F.(2d) 648, 652. We are, therefore, of the opinion that there was no substantial evidence that while the plaintiff's policy was in force the conditions upon which his disability was based rendered it reasonably certain that it would result in any greater future impairment than the loss of his leg. It is our opinion that the loss of a leg between the knee and ankle, in the absence of other complications, cannot be regarded as a total and permanent disability. It is a partial permanent disability.

The case of Hanagan v. United States (C. C. A. 7) 57 F.(2d) 860, involved an ankylosed kneejoint. The court held that a finding by the lower court that the insured was not totally and permanently disabled was justified, although the evidence showed that he could not resume his prewar occupation of mining and had done no gainful work since his injury.

In United States v. Martin (C. C. A. 5) 54 F.(2d) 554, where the evidence showed impairment of the strength and usefulness of one leg, causing pain and inconvenience in getting about, the court set aside the verdict of a jury finding total and permanent disability.

In United States v. Weeks, 62 F.(2d) 1030, this court held that the shortening of a leg to the extent of two and one-half inches as the result of gunshot wounds, together with subsequent nervousness and shortness of breath, were not sufficient to sustain a judgment for the plaintiff, although the testimony showed that the leg was painful to bear weight upon, that swelling occurred when it was used, and that the insured had formerly been a farmer by occupation and had done little work since his injury.

United States v. Mayfield (C. C. A. 10) 64 F.(2d) 214, is not distinguishable from the instant case. There there was a loss of a leg below the knee, due to a gunshot wound. The first amputation was in 1918, and there was a second amputation in 1926. The stump was sore and gave the insured discomfort when he wore an artificial leg. Prior to the war he was a farmer and laborer. After the war he first did shoe repairing and then farm-

ing, but was not successful in either occupation. The lower court had found that he was totally and permanently disabled, but the appellate court held that the evidence did not support that finding.

Our conclusion is that the court below was required to direct a verdict in favor of the government.

Since the plaintiff's evidence would not have justified a conclusion that he was, while his policy was in effect, a totally and permanently disabled man, it is unnecessary to consider the rulings of the court with respect to hypothetical questions propounded to the plaintiff's experts upon that subject. If these rulings were erroneous, they were not prejudicial, not only because the answers to them would not have changed the result, but for the further reason that, since there were no offers of proof made after objections were sustained, we are not advised as to what the answers would have been. See Proechel v. United States (C. C. A. 8) 59 F.(2d) 648, 650.

The judgment is affirmed.