## NORTON v. UNITED STATES.
### No. 2911.

District Court, M. D. Pennsylvania.
Oct. 18, 1933.

Frank T. Butler and Ralph L. Levy, both of Scranton, Pa., for plaintiff.

Andrew B. Dunsmore, U. S. Atty., of Wellsboro, Pa., Herman F. Reich, Asst. U. S. Atty., of Sunbury, Pa., and Leo G. Knoll, Asst. U. S. Atty., of Scranton, Pa.

JOHNSON, District Judge.

This is a suit to recover on a policy of war risk insurance. The policy was issued in January, 1918, and premiums were paid monthly by the plaintiff until June, 1924, when he allowed the policy to expire for nonpayment of premiums. On February 5, 1932, the plaintiff brought suit on the policy alleging that on July 19, 1918, while actively engaged in the military service of the United States at the second battle of the Marne, he was wounded in the right leg, which was later amputated below the knee, and injured in his left leg by a bayonet. The plaintiff contends that his policy matured on July 19, 1918, as on that date he was totally and permanently disabled, and that under the terms of the contract of insurance he is entitled to receive the sum of $57.50 a month for a period of 240 months.

The United States of America, in its answer, denies that the plaintiff was totally and permanently disabled, and further denies any liability under the contract of insurance.

The question of fact, whether under all the evidence the plaintiff was permanently and totally disabled and, if so, on what date disability began, was submitted to the jury. The jury found by their verdict that the plaintiff was permanently and totally disabled, and that such disability began August 1, 1918.

Counsel for defendant has filed a motion for a new trial and has assigned therefor a number of reasons, based chiefly on the refusal of the court to direct a verdict for the defendant because the plaintiff's testimony bearing upon his permanent and total disability was insufficient to warrant the submission of the case to the jury.

The only witness to testify to the extent of plaintiff's injuries was the plaintiff himself. He testified that he was 52 years of age, and that previous to his enlistment in the army he had been a coal miner; that in the second battle of the Marne on July 18, 1918, his right leg was shot off and a German soldier plunged a bayonet through his left leg; that he remained in the hospital until discharged from the army in February, 1919; that he was furnished with an artificial leg by the government and was sent to a tinsmith for vocational training; that after working there several months he was discharged because he was not adapted to that kind of work; that the Veterans' Bureau then sent him to a shoe factory to learn shoe repairing, but he left there in April, 1920, after working several months because his legs pained him to such an extent that he could not sit at his machine for more than twenty minutes at a time; that he continued in vocational training, working in various shoe repair shops for short intervals until 1923 when he was taken out of vocational training; that he then secured work at several places on his own initiative, working a day or two at each place, but was compelled to give these places up because he could not keep up with the work; that in October, 1924, he secured a position as night watchman at a greenhouse, taking care of the fires and walking through the greenhouses to watch the temperature; that he received $25 a week and worked continuously until March, 1928, with the exception of two periods, once for one week and again for two weeks when he was unable to work because the stump of his right leg became too sore to walk on; that he was discharged from this position because he was unable to continue making the rounds of the greenhouses owing to the pain in his legs; following his discharge from the greenhouse he had several other positions at which he worked for short intervals but always was compelled to leave because he could not stand on his legs; that he also tried farming for a short period, but that also was unsuccessful.

The defendant placed two doctors on the stand who testified that they had examined the plaintiff some years before, when they had been employed by the Veterans' Bureau; that while the injury to the plaintiff was permanent, it was not total, and that in their opinion he was capable of performing various kinds of light work such as elevator operator, watchman, door tender, or any work not requiring continuous standing or walking.

The court overruled the motion for a directed verdict in favor of the defendant, and submitted the case to the jury to determine whether the plaintiff was totally and permanently disabled within the definition promulgated by the Bureau of War Risk Insurance in Regulation 11 under the authority of section 13 of the War Risk Insurance Act of 1917 (40 Stat. 398), as amended, which is as follows: "Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gainful occupation shall be deemed, in articles III and IV, to be total disability."

Since the trial of this case the Circuit Court of Appeals of the Tenth Circuit has

handed down a decision in the case of the United States v. Mayfield, 64 F.(2d) 214, 215, wherein the judgment of the District Court in favor of the plaintiff, Mayfield, was reversed on facts quite similar to the facts of this case. In the Mayfield Case, the court in citing several other recent cases of a like kind clearly indicated a marked tendency of the federal courts to disallow recovery under these contracts of war risk insurance in cases where the express and crucial terms of the contract have not been met, and not to allow the question of total disability of the claimant to be submitted to the jury in cases where the undisputed facts clearly show that, notwithstanding the plaintiff's contention of total disability, he has nevertheless followed some substantially gainful occupation continuously over a long period of time.

In delivering the opinion of the court in the case of the United States v. Mayfield, supra, Lewis, Circuit Judge, said: "Not only is it a matter of common knowledge that there are many occupations which men with one leg can successfully follow, but the record contains unchallenged proof of that fact. Dr. Border, a physician and surgeon and a witness for the defendant, testified that in his opinion while a man with one leg is permanently disabled he is not totally disabled; that he had seen men with one leg making a living at various sorts of trades; that he had seen a man with one leg off doing carpenter work; that he could run elevators; that he had seen a man who was then at Mangum with both legs off, who acts as depot agent and walks a half mile back and forth every day; that in his opinion the knee could be properly padded so that the stump wouldn't become sore with the peg leg; that plaintiff could conduct a tourist camp, and follow other occupations.

"The shoe repair man whom plaintiff had bought out had lived at Mangum twenty-four years, and had been in the shoe repair business since 1882. He had electrical machinery in his shop. He testified that he had seen lots of men with one leg operate a shoe repair shop with success; that such work does not require standing up all the time; that there was a man with one leg operating and carrying on a shoe repairing business at El Reno; one at Stamford, Texas, with both legs off making a living for his family; one at Wichita Falls, Texas, on crutches who had to sit down to do the work, but was making a living. But as said, this is a matter of common knowledge.

"In Hanagan v. United States (C. C. A.) 57 F.(2d) 860, 861, the soldier did not lose his leg, but he was wounded while in the service in the left knee so that his leg, according to the proof, was practically useless. For a considerable time he used crutches and afterwards a cane. At times the leg gave way in walking. His occupation had been that of a miner. The court in affirming the judgment in favor of defendant said:

" 'Notwithstanding appellant's great service and sacrifice, and the evident permanent injury to his leg, this case involves no matter of sentiment, but only of contract. It can scarcely be denied that there is in the record substantial evidence indicating that this man is capable of undertaking and continuously performing such work as a one-legged man can do, and therefore he was not and is not totally disabled as the contract provides must be the case to warrant recovery upon the certificate.'

"In United States v. Weeks (C. C. A.) 62 F.(2d) 1030, the plaintiff had judgment which was reversed on appeal. While in the service he was shot four times in his right leg above the ankle. After discharge he did very little work except making a small garden and doing some hoeing. The injured leg was two to two and one-half inches shorter than the other. It was painful to bear weight upon it, and swelling occurred when he used it. His occupation had been farming, and he was not able to farm since his discharge. Three laymen and two doctors testified that he was not able to follow continuously any substantially gainful occupation, and that such condition was permanent. It appears in that opinion that the soldier did far less than the plaintiff in this case has done towards making a living. Of course, the fact that he did less is not a test, but the proof as to what this plaintiff has done during 1919 and since is convincing proof that he was not on July 1, 1918, totally disabled; and because thereof the policy lapsed on July 1, 1918, and was not in force when this suit was instituted.

"A physician and surgeon was called by the plaintiff. He testified that he did not think the plaintiff could follow continuously any substantially gainful occupation for which he is qualified on account of his condition, but then he added, 'It is not directly his leg; it is his physical condition along with it.' On cross-examination he said he had seen men who had lost a leg wear an artificial limb with success and use peg legs

with success; that in the use of the peg leg there is no pressure on the exposed bone. But there was no proof of plaintiff's physical condition, aside from his having lost his leg, on July 1, 1918, and the plaintiff did not claim to have any physical ailments.

"Obviously, plaintiff is permanently disabled and cannot continuously do the things required in some occupations, but we think it equally plain that there are other and many occupations to which he can continuously apply himself; and we think it also true on undisputed proof that there would be far less and probably no frequent irritation of the limb if he would wear a peg leg that had been properly fitted to the knee.

"We think the judgment should be reversed. It is so ordered."

In the United States v. Harth, 61 F.(2d) 541, the Circuit Court of Appeals for the 8th Circuit after reviewing a number of recent cases on the subject said:

"It is to be presumed that any appreciable degree of disability is attended by discomfort, pain, or, at least, by inconvenience and handicap in the discharge of the normal activities of life. If such conditions are to be deemed sufficient to warrant recovery under the terms of a war risk policy, then the precision with which the degree of disability, necessary for such recovery, has been defined was wholly unnecessary.

"Appellee sustained a severe wound while in service on the field of battle. It is no doubt a serious handicap in the pursuit of a substantially gainful occupation. He is entitled to compensation commensurate with the disability he has suffered. If that he now receives is inadequate, the law provides opportunity for review, and for increase, if that is found to be warranted. USCA title 38, § 494, p. 235; Hines v. United States ex rel. Livingston, 59 App. D. C. 363, 42 F.(2d) 347. But we cannot approve recovery upon a contract of insurance, the express and crucial terms of which have obviously not been met.

"The judgment below must be reversed and remanded for further proceedings not inconsistent with this opinion. It is so ordered."

In the case at bar the only evidence tending to show total disability was the testimony of the plaintiff himself. His injuries consisted of an amputated right leg below the knee, which became aggravated and painful from the friction of the artificial limb, and a bayonet wound in his left leg, which was healed over and gave him pain only after continuously standing on the leg. Aside from these injuries the plaintiff suffered no other ill health, except that he testified that he became nervous when his legs pained him.

The fact that the plaintiff worked continuously for a period of approximately three and one half years, while not necessarily conclusive, is strong evidence indicating that the plaintiff is capable of continuously performing such work as a one-legged man can do and, therefore, is not totally disabled, as the contract provides must be the case to warrant recovery under the policy.

The uncontradicted testimony of the doctors shows that while this plaintiff cannot follow his prewar occupation, nevertheless there are many positions which he can hold. During the trial of the case counsel for the plaintiff admitted that the man could work at some things.

There is no question but that the plaintiff is permanently disabled and cannot continuously do the work required in a great many occupations, but there are some occupations which the plaintiff can follow, and in view of the foregoing decisions this is sufficient to prevent recovery under the policy of insurance, which provides that there must be total permanent disability. A new trial must, therefore, be granted.