### MAGENTON v. UNITED STATES.
### No. 9971.

Circuit Court of Appeals, Eighth Circuit.
Jan. 31, 1935.

E. B. Adams and C. A. Wilson, both of Hot Springs, S. D., for appellant.

Armistead L. Boothe, Atty., Department of Justice, of Washington, D. C. (George Philip, U. S. Atty., and Frank Wickhem, Asst. U. S. Atty., both of Sioux Falls, S. D., and John T. Heffron, Asst. U. S. Atty., of Deadwood, S. D., on the brief), for the United States.

Before GARDNER, SANBORN, and VAN VALKENBURGH, Circuit Judges.

SANBORN, Circuit Judge.

From a judgment entered upon a directed verdict for the defendant in an action upon a policy of war risk insurance, this appeal is taken. The insured was discharged from the service on February 15, 1919. He paid no premiums on his policy thereafter. It lapsed March 31, 1919. He brought this action in August, 1932, claiming that, prior to the date of his discharge and while he was in the service, he was "afflicted" with a compound fracture of the right elbow, a paralytic stroke, bronchitis, pneumonia, tonsilitis, and "general weakness and disability," which caused total and permanent disability. This the government denied.

The right of the insured to recover under his expired policy depended upon his condition while his policy was in force. Evidence of his condition subsequent to the lapse of the policy was only admissible for the purpose of showing the nature and extent of the disability existing prior to lapse. Eggen v. United States (C. C. A. 8) 58 F. (2d) 616, 619; Proechel v. United States (C. C. A. 8) 59 F.(2d) 648, 652; Thompson v. United States (C. C. A. 8) 65 F.(2d) 897, 898; United States v. Green (C. C. A. 8) 69 F.(2d) 921; Cockrell v. United States (C. C. A. 8) 74 F.(2d) 151, opinion filed November 17, 1934; Lumbra v. United States, 290 U. S. 551, 54 S. Ct. 272, 78 L. Ed. 492; United States v. Spaulding, 55 S. Ct. 273, 79 L. Ed. ——, opinion filed January 7, 1935.

The appellant contends that there was some substantial evidence that, while his policy was in force, he became totally and permanently disabled. It is unnecessary to set forth the evidence in detail. His own testimony as to the history of the nature and extent of his injuries while in the service is, briefly, as follows:

"I was injured at Alsace Lorain while in service. I received a compound fracture of the right elbow and had spinal trouble. At the time we were on our way to your destination, Alsace Lorain, we stopped in a small village and while there a squad of us were put on detail duty work, hauling garbage. The driver of the truck was very careless. While we were loading the truck some of the stuff slipped backwards and knocked three of us fellows off and I fell backwards off the truck onto some cement behind the truck. I fell on my right shoulder, and caused a fracture of my right arm. I was unconscious and they sent me to a hospital. When I came to, I tried to move my left side—to move my left leg over to my right one, and I could not do so. Neither could I move my right arm for some reason unknown to me. Some called it a paraletic stroke. I was in the hospital approximately thirty-nine days. While there a surgeon massaged my right arm, and put a stretcher on it and tried to pull it into place in order to join the bones. This he failed to do.

"After my discharge from this hospital, I was sent to a place called Blois in France. I was there approximately three months at Blois Hospital No. 13. I did not resume my previous work in the Army. From there I was transferred later on to Brest.

"Previous to my enlistment in the Army, I had broken my right arm, but there remained no noticeable deformity from this break. At the time of this break the arm had been set right. In the service it was broken at the elbow and my shoulder blade was also fractured, I think. * * *

"After the accident in France I was moved to another camp and then I went to America. I was recommended for S. C. D. on account of my condition in France. They failed however to give me the S. C. D. in the rush at that time. I was discharged at Camp Dodge, Iowa, and right at that time was in the same condition and worse—practically in the same condition as when injured. I was having trouble with my left

side; trouble showing all through my body, spine and both arms. At that time I was slightly paralized in the right arm. I could not grip anything and hold onto it under any condition, and it pained me terribly. This was when I was discharged from the service."

The appellant, who had a sixth grade education, had been a farm hand prior to the war. After discharge, he went to his "uncle's place." He stayed with his uncle for about three months, and then went to the farm of a man named Bakke, near Walcott, N. D., where he remained for approximately six months, working as a farm hand. He says that he did little work, and that what little he did was done with his left hand; that he could not "hang onto things" and could only hold "loose-mouthed horses"; that, when he was driving teams hitched to farm implements, he would sometimes fall off the implements and have a runaway; that he could not hang onto the reins for lack of grip in his hands. He says that, for the six months that he worked for Bakke, he was paid a little less than a hundred dollars.

He applied for and received compensation almost immediately after his discharge. The amount of compensation was $30 a month, and he was notified by the Bureau of War Risk Insurance, on March 1, 1919, that he had been awarded such compensation from the 16th day of February, 1919, to continue during the period in which he was "totally disabled." After he left the Bakke farm, he engaged in no gainful occupation, but lived upon his compensation. He was twice married, and in 1928 suffered a paralytic stroke, which the evidence indicates was probably due to syphilis, which it appears he had added to his other afflictions by that time. At the time of the trial he was partially paralyzed and unable to work.

There was sufficient evidence to justify a finding of total disability at the time he was discharged from the service. There was, however, no competent evidence that at any time prior to March 31, 1919, he had a total permanent disability, although there is no dispute as to his having received in France a compound fracture and dislocation of his right elbow, which virtually rendered his right arm useless. The loss of use of one arm or one leg has never been considered total disability for war risk insurance. United States v. Weeks (C. C. A. 8) 62 F. (2d) 1030; United States v. Thomas (C. C. A. 4) 53 F.(2d) 192; United States v. Mayfield (C. C. A. 10) 64 F.(2d) 214; United States v. Ivey (C. C. A. 10) 64 F.(2d) 653; Thompson v. United States (C. C. A. 8) 65 F.(2d) 897, supra; United States v. Harris (C. C. A. 4) 66 F.(2d) 71; United States v. Adcock (C. C. A. 6) 69 F.(2d) 959; Miller v. United States (C. C. A. 5) 71 F.(2d) 361.

There was no testimony upon which a jury could have based a finding that the insured had, prior to March 31, 1919, an incurable paralysis.

"The existence of this specific disease was a strictly medical question; the conclusions of laymen upon such an issue are without adequate basis, and, necessarily, mere speculation. United States v. Clapp (C. C. A. 2) 63 F.(2d) 793, 794." Ætna Life Ins. Co. of Hartford v. Kelley (C. C. A. 8) 70 F.(2d) 589, 593, 93 A. L. R. 471.

Medical testimony that the insured, while his policy was in force, was suffering from paralysis in any form, is entirely lacking. Neither is there any adequate basis found in the evidence for any opinion that he was paralyzed while his insurance was in force.

The evidence that, after the insured was injured in France, he was recommended for discharge from service because of disability, is not evidence that he was at that time totally and permanently disabled. Blair v. United States (C. C. A. 8) 47 F.(2d) 109, 110. Nor does the evidence that he was given, after discharge, a total disability rating for compensation purposes, help his case. United States v. Golden (C. C. A. 10) 34 F. (2d) 367, 370; McNally v. United States (C. C. A. 8) 52 F.(2d) 440, 443; United States v. Thomas (C. C. A. 4) 53 F.(2d) 192, 195, supra; Demeter v. United States, 62 App. D. C. 208, 66 F.(2d) 188, 189. Moreover, his long delay in bringing suit was strong evidence that he was not totally and permanently disabled prior to March 31, 1919. Lumbra v. United States, 290 U. S. 551, 560, 561, 54 S. Ct. 272, 78 L. Ed. 492, supra; United States v. Spaulding, supra, opinion filed January 7, 1935.

The judgment is affirmed.