## GRAY v. UNITED STATES.

### No. 11548.

Circuit Court of Appeals, Eighth Circuit.

Feb. 23, 1940.

O. D. Longstreth, of Little Rock, Ark., for appellant.

Thomas E. Walsh, Atty., Department of Justice, of Washington, D. C. (Julius C. Martin, Director, Bureau of War Risk Litigation, of Washington, D. C., Wilbur C. Pickett, Sp. Ass't. to Atty. Gen., Keith L. Seegmiller, Atty., Department of Justice, of Washington, D. C., and Sam Rorex, U. S. Atty., of Little Rock, Ark., on the brief), for appellee.

Before GARDNER and WOODROUGH, Circuit Judges, and MOORE, District Judge.

WOODROUGH, Circuit Judge.

Dr. C. R. Gray, administrator of the estate of Everett Ford, deceased, appeals from a judgment in favor of the United States in this suit on the war risk insurance policy issued to Everett Ford, a veteran of the World War. The veteran instituted the action himself in October, 1931, but died very shortly before the trial of the case in February, 1938. Revivor was entered in the name of Dr. C. R. Gray, administrator, and jury having been waived by stipulation the trial was to the court. The sole issue, as appears from the stipulation of the parties and the record, was whether or not Ford had become totally and permanently disabled during the life of the insurance which had been kept in force up to January 1, 1919. The trial court found that he was not.

The appellant recognizes that the trial court's finding may not be set aside in this court unless clearly erroneous, and that this court must give due regard to the opportunity of the trial court to judge of the credibility of the witnesses, Rule of Civil Procedure 52. (a), 28 U.S.C.A. following

section 723c, but contends that total and permanent disability was shown by the uncontradicted evidence to have existed continuously from the time of the veteran's discharge in December, 1918, to the time of his death in 1938, and that there was no substantial evidence to the contrary.

Upon careful examination of the testimony we are persuaded that the contention may not be sustained. The testimony showed without conflict that on the day before Ford was inducted into the army he visited Dr. Charles O. M. Gamble and that a tentative diagnosis then made without blood test indicated the presence of syphilis but that the doctor considered that the man was physically fit and able to do the work of a farm hand. On August 18, 1918, Ford was given the anti-typhoid injections then administered to recruits. He collapsed and fell forward on his face and was taken to the hospital. In December, 1918, he was discharged as unfit for service under certificate from the Board of Medical Officers stating: "We find that he is unfit for service as a soldier because of hemiplegia, partial paralysis of the radial nerves, right; in that he is lame, cannot drill, march or perform other duties of a soldier. Unfit for domestic service. His disability for earning in view of his former occupation is four tenths." From the date of discharge until his death in 1938 Ford never recovered any use of his right arm. He kept the arm under the jumper of his overalls, giving the appearance of having only one arm. He was hospitalized on several occasions and was frequently examined by medical experts. He received compensation for partial disability and when hospitalized and during the last two years of his life for total disability. He never did any work from the date of discharge until his death.

The two doctors who testified for the plaintiff did not agree upon what the ailment was from which Ford suffered after his discharge. One diagnosed the disease as quick progressive spinal atrophy or progressive muscular atrophy or wasting palsy. The other found it to be hemiplegia, which he defined as paralysis of some part of the body. They agreed that Ford's disease was totally and permanently disabling and incurable and that any attempt on the victim's part to labor would have hastened his death. Both had frequent opportunity to make their observations over long periods of time.

On the other hand, the opinion of medical experts recorded in the government records was that Ford's disability should be rated four-tenths. A doctor in Veterans' Bureau diagnosed the disease in 1924 as hysterical paralysis of the right arm. Dr. Pat Murphy examined the insured in 1924, 1927, and 1932, and testified that Ford had no disability except hysterical paralysis of the right arm; that the paralysis was not organic; that there was no organic disease or injury of the brain or nervous system and no mental deterioration and that his memory was good; that the paralysis was confined to the right arm and was distinguished from hemiplegia, which means paralysis of half of the body, as of both legs or both arms or an arm and leg. It was this doctor's opinion that Ford was "able to do any kind of work that anybody could do with one arm."

It appeared that Ford received total compensation[1] amounting to more than $15,000 and that he felt no incentive to work. In giving the history of his case to a medical examiner on August 31, 1932, he stated: "I have not had any work since I have been out of the army. I have not had to work because I have been drawing compensation. I am now drawing $66.00 a month. I got married last year. I don't have to work now because we can live on my compensation. I have not tried to work any. I have not got any feeling in my right arm. I cannot move it. It just hangs to my side like it was dead. I have got good feeling in my legs and in the other arm. I feed and dress myself every day, go anywhere I want to. I can do anything I want to by using my other arm, but I just cannot use my right arm. Yes, I guess I could work but I never tried because I have been getting enough money from the United States to keep me going. What was the use of working?" See Greenwall v. United States, 8 Cir., 76 F.2d 713, 714, 715; United States v. Fain, 8 Cir., 103 F.2d 161, 164.

There also appeared the long unexplained delay in asserting claim under the policy. Although his claim for compensation made in 1919 was supported by a showing that his disability was total and permanent, he was advised of the government's position that it

[1] The evidence of compensation paid was admissible. Morrow v. United States, 7 Cir., 101 F.2d 654, 656; Cockrell v. United States, 8 Cir., 74 F. 2d 151; Taylor v. United States, 5 Cir., 71 F.2d 76.

was only partial and it is not probable that he would have delayed so long to claim the insurance benefits if he had honestly believed himself to be totally and permanently disabled since 1919. See Noble v. United States, 8 Cir., 98 F.2d 441; Lumbra v. United States, 290 U.S. 551, 54 S.Ct. 272, 78 L.Ed. 492.

Some reasonable question as to the accuracy of the administrator's testimony was raised by its inconsistency with a certain statement he had made and signed in the presence of an examiner and by his failure to produce his office records.

█ Though it might be .conceded that the plaintiff's testimony standing alone would have justified judgment in his favor, there was conflict of testimony on the vital question of whether Ford's disability was total or partial and whether or not he was able to do the kind of gainful work that one armed men similarly circumstanced can and do continuously achieve. The trial court's determination must stand. That "the loss of use of one arm or one leg has never been considered total disability for war risk insurance" is well settled. Magenton v. United States, 8 Cir., 75 F.2d 410, 412; United States v. Weeks, 8 Cir., 62 F.2d 1030; United States v. Thomas, 4 Cir., 53 F.2d 192; Thompson v. United States, 8 Cir., 65 F.2d 897; United States v. Harris, 4 Cir., 66 F.2d 71; United States v. Mayfield, 10 Cir., 64 F.2d 214; United States v. Ivey, 10 Cir., 64 F.2d 653; United States v. Adcock, 6 Cir., 69 F.2d 959; Miller v. United States, 5 Cir., 71 F.2d 361.

Affirmed.