**DEEP ROCK OIL CORPORATION v. SALISBURY et al.**

No. 12245.

Circuit Court of Appeals, Eighth Circuit.

Aug. 19, 1942.

Rehearing Denied Sept. 22, 1942.

Roy K. Dietrich, of Kansas City, Mo. (Frank E. Tyler, Raymond E. Draper, and Gossett, Ellis, Dietrich & Tyler, all of Kansas City, Mo., and W. F. Semple, of Tulsa, Okl., on the brief), for appellant.

Charles M. Miller, of Kansas City, Mo., for appellee, Community Federal Savings & Loan Ass'n and another.

Before SANBORN, THOMAS, and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

This suit was brought by H. N. Greis as trustee in reorganization proceedings under § 77, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 205, sub. b, for the Deep Rock Oil Corporation, a Delaware corporation engaged in the production and wholesale distribution of petroleum products, to recover the sale price of gasoline and oil which the corporation claimed to have sold and delivered to the defendants during the month of October, 1939. The defendants were the Premium Petroleum Corporation, a Missouri corporation engaged in the sale of petroleum products in Independence, Missouri; Community Federal Savings and Loan Association of Independence, Missouri, a savings and loan association chartered by the Federal Home Loan Bank Board of Washington, D. C., pursuant to the provisions of the Home Owners' Loan Act of 1933, 12 U.S.C.A. § 1464; Federal Savings and Loan Insurance Corporation, receiver for the purpose of liquidating the assets of Community Federal Savings and Loan Association by appointment of the Federal Home Loan Bank Board, in accordance with the power granted by the Home Owners' Loan Act of 1933, 12 U.S.C.A. § 1464; and Spencer Salisbury, Adeline Barton, and Myron W. Cox.

The trial before the court, without the intervention of a jury, resulted in a judgment in favor of all defendants. This appeal questions only the judgment in favor of the Community Federal Savings and Loan Association and its receiver. After the decision of the case by the lower court, Deep Rock Oil Corporation was substituted as plaintiff in place of H. N. Greis, trus-

tee for the corporation, on the showing that the proceedings under § 77, sub. b, of the Bankruptcy Act had been terminated and that the trustee had transferred to the corporation all of the assets which he held at the institution of the suit. For brevity the appellant oil corporation will be referred to in this opinion as Deep Rock and the appellee savings and loan association as Community.

Greis charged in his petition that Community and the individual defendants took possession of all of the assets of the Premium Petroleum Corporation and thereafter operated its business in an effort to collect a debt owing by it to Community; that during this operation Deep Rock sold and delivered to Community and the individual defendants certain petroleum products for which the defendants declined to pay the agreed purchase price although all of the products were received by the defendants and by them used in the operation of the business of the Premium Petroleum Corporation for the account of Community. Community and its receiver denied the allegations of the complaint concerning the operation of the Premium Petroleum Corporation by Community and the purchase or receipt by them of any of the products of Deep Rock. They further alleged that Community was wholly without power under its charter to engage in the gasoline and oil business either directly or indirectly, or by trustees or agents, and averred that any contracts alleged in the complaint to that end were, if made, ultra vires and void. Premium Petroleum Corporation was adjudicated a bankrupt about the time the present suit was instituted. On the showing that Deep Rock had proved its claim in the bankruptcy proceedings, where it had been allowed, the suit against Premium Petroleum Corporation was dismissed without prejudice to further proceedings against the remaining defendants.

The evidence on behalf of the appellant establishes the following facts: In February 1938, one Anna O'Dowd was indebted to Community for a loan which was secured by a mortgage in favor of Community on certain real estate in Independence, Missouri. The Premium Petroleum Corporation occupied the real estate under a lease from Anna O'Dowd. Spencer Salisbury, president of Community, was also president of the Premium Petroleum Corporation, and that company was heavily indebted to him and to his wife. He had also guaranteed to Deep Rock the payment of the account of Premium Petroleum Corporation for the purchase of petroleum products. Anna O'Dowd was in default in the payments on her debt to Community. In these circumstances, the board of directors of Community adopted a resolution reciting that Anna O'Dowd was unable to pay her debt to Community, that she was willing to convey to Community the mortgaged real estate in satisfaction of the debt, and that Premium Petroleum Corporation was willing to convey to Community all of its assets; authorizing the executive committee of the board to accept from Anna O'Dowd a deed conveying the real estate to Community and from the Premium Petroleum Corporation a conveyance of all of its assets, this conveyance to be made to the nominees of the executive committee of the board as trustees; and directing the executive committee to operate the Premium Petroleum Corporation for and on behalf of and to the use and benefit of Community. Following this resolution Anna O'Dowd conveyed the real property to Community and the Premium Petroleum Corporation conveyed all of its assets to Spencer Salisbury and Adeline Barton, a bookkeeper in the employ of Community, who was later succeeded by Myron W. Cox, as trustees. Community and the trustees entered into a written agreement in which, after reciting the foregoing facts, the trustees declared that they held the assets of the Premium Petroleum Corporation for the use and benefit of Community; that they would operate the business of the petroleum corporation under the supervision of the board of directors of the beneficiary; and that with the moneys advanced by Community, they would liquidate all claims against the Premium Petroleum Corporation. At the time of these transactions, Premium Petroleum Corporation was not indebted to Community. It was, however, in desperate financial straits, if not insolvent. Community advanced funds for the payment of its obligations.

It further appeared from the evidence that Deep Rock had for many years sold its products to Premium Petroleum Corporation, which did a business of considerable volume, sometimes purchasing from Deep Rock as many as 100,000 gallons of gasoline in one month. Sales were made on the credit of the Premium Petroleum Corpora-

tion, secured by the guarantee of Spencer Salisbury. In March 1938, Deep Rock received checks for the account of Premium Petroleum Corporation signed by the trustees and countersigned by a member of the executive committee of Community. The receipt of these checks caused the general sales manager and the credit manager of Deep Rock to go to Independence to investigate the situation. They were told by Salisbury that the trustees had taken over the Premium Petroleum Corporation and were operating it for the benefit of Community. The account with Deep Rock was paid in full and Salisbury was released from his guarantee. The Deep Rock officials returned to their office in Chicago with the matter of extending credit to the trustees under consideration. They were advised by their counsel that Community had no authority under its charter to engage in the gasoline and oil business and that apparently there were no assets whatever back of the trustees. Salisbury had declined to exhibit to the officers of Deep Rock the agreement upon which he and the other individual defendants were acting as trustees. Accordingly, the credit manager of Deep Rock addressed a letter to Salisbury in which he advised the latter that credit could not be extended "under the present setup until a new corporation is formed to take over the assets of Premium Petroleum Corporation, which will be financially responsible". The credit manager expressed the hope that his inability to extend credit to the "trusteeship" would not have "an adverse reaction on our cordial relations". He solicited the continued patronage of Premium Petroleum Corporation on "sight draft terms". Following the receipt of this communication, Salisbury addressed to Deep Rock a letter purporting to guarantee payment of purchases made by Salisbury and Barton as trustees for Community to the amount of $2,000 on ten days' credit, reserving the right to terminate the guarantee upon ten days' notice. This letter was signed "Community Federal Savings and Loan Association by Spencer Salisbury, President."

It does not appear that Salisbury had any authority from the board of directors of Community to execute this purported guarantee but, however that may be, the sales manager of Deep Rock testified that no credit was ever extended or reliance placed by him upon the guarantee except in so far as it afforded him evidence that Community was interested in the Premium Petroleum Corporation and probably would continue to advance funds to it. In acknowledging receipt of the so-called guarantee, the credit manager of Deep Rock advised Community that Deep Rock interpreted the letter to mean that Spencer Salisbury and Adeline Barton, trustees for Community, guaranteed purchases by Premium Petroleum Corporation to the amount of $2,000 on ten days' credit. He stated that the guarantee, so interpreted, was acceptable and that purchases would be billed to "Premium Petroleum Corporation in care of Spencer Salisbury and Adeline Barton, trustees for Community". Thereafter the shipments were made by Deep Rock and billed as above stated for six months, after which the account was carried on the books of Deep Rock in the name of "Premium Petroleum Corporation" until October 27, 1939, when Deep Rock declined to extend further credit. At that time the account was in arrears. Deep Rock consulted counsel with the view to institution of the present suit and, on the advice of counsel, changed its books to show the charge for its sales to be in conformity with the letter of the credit manager as above stated.

The district court found that Community never operated the business of the Premium Petroleum Corporation; that Premium Petroleum Corporation was not indebted to Community at the time of the conveyance of its assets; that the plaintiff never extended credit to Community; and that the sale of the plaintiff's products was made by the plaintiff to Premium Petroleum Corporation. The court also held that Community was without power under its charter to engage in the operation of the business of the petroleum corporation; that the purported trust agreement between Community and the trustees was, therefore, void and of no effect; and that the plaintiff was not entitled to recover.

We are asked to reverse the judgment of the district court on the grounds (1) that a savings institution has power to take over and operate a business corporation for the purpose of collecting a debt owing it by that corporation, reliance for this proposition being placed on Atherton et al. v. Anderson, 6 Cir., 86 F.2d 518; Cockrill v. Abeles, 8 Cir., 86 F. 505; and (2) that even if Community was without this power under its charter, it is estopped to assert its want of power in this respect because it had received and converted to its use the

property of the appellant, supporting this proposition by cases like First National Bank of Kansas City v. Guardian Trust Company, 187 Mo. 494, 86 S.W. 109, 70 L.R.A. 79. As justification for these contentions it is asserted that the only defense advanced by the appellees at the trial was the want of power in Community to engage in the business of buying and selling petroleum products. The argument ignores the findings of fact made by the district judge and incorrectly states the defense advanced by the appellees in the trial court. That defense included a denial of all of the transactions charged by the appellant to Community.

The appellant's first ground for reversal is answered by the finding of the trial court, undisputed in the evidence, that at the time of the supposed taking over of the Premium Petroleum Corporation by Community, the petroleum corporation was not indebted to Community. The cases relied upon furnish no support for the proposition that a savings association of the character of Community may take over a failing business corporation for the purpose of becoming indebted to it. The determinative finding of the trial court, however, is that the sales of Deep Rock were never made to Community, nor in reliance upon Community's credit, but, in fact, were made to Premium Petroleum Corporation upon the credit of that corporation. We are unable to say under the evidence in the record that this finding of the district judge was clearly erroneous. On the contrary, we think it has ample support in the evidence offered by the appellant. In these circumstances we may not set it aside. Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Aetna Life Insurance Co. v. Kepler, 8 Cir., 116 F.2d 1; Columbia Insurance Co. v. Peoples Exchange Bank, 8 Cir., 109 F.2d 530; Gray v. United States, 8 Cir., 109 F.2d 728; Storley v. Armour & Co., 8 Cir., 107 F.2d 499; Missouri Pac. R. Co. v. George, 8 Cir., 114 F.2d 757.

It is undisputed that Deep Rock, on the advice of counsel, declined to extend credit or sell its products to Community or its trustees on the ground that Community was without authority to engage in the gasoline and oil business, and that the trustees were without any visible assets justifying the extension of credit. The sales were never charged on the books of Deep Rock either to Community or to the trustees, but always to the Premium Petroleum Corporation. The corporation's account in the past had always been valuable. It is plainly to be inferred from the testimony that the sales manager and the credit manager of Deep Rock were anxious to continue sales and to keep the account. They had accepted as security for the account the personal guarantee of Spencer Salisbury, with results entirely satisfactory to them. The letter of the credit manager, acknowledging receipt of the purported guarantee by Community of Premium Petroleum Corporation's account to the extent of $2,000, is explicit in showing that Deep Rock accepted it as the personal guarantee of Spencer Salisbury and that the sales of Deep Rock were, in fact, made to Premium Petroleum Corporation and not to Community. In these circumstances it is difficult to believe that Deep Rock extended credit to Community or to the so-called trustees of Community, as such, or that it relied upon the contents of an instrument which none of its officials had ever been permitted to see.

In view of the district court's finding that the appellant never sold any of its products to Community, nor relied upon the credit of Community in its sales to the Premium Petroleum Corporation, it is of no significance that Community attempted to operate, or operated, the Premium Petroleum Corporation. In either case, under the district court's finding, the appellant refused to recognize that operation or to rely upon it. It is neither necessary nor proper, therefore, to decide the questions raised by the appellant concerning the power of Community to engage in the business of buying and selling gasoline and oil.

The judgment of the district court is affirmed.