**LAMBORN et al. v. NORTHERN JOBBING CO.**

(Circuit Court of Appeals, Seventh Circuit. December 15, 1926.)

No. 3784.

1. **Exceptions, bill of ⊚⇒59(1)—Nunc pro tunc order, correcting certificate to bill of exceptions, held proper, and bill sufficiently certified (Circuit Court of Appeals rule 10, § 2).**

Nunc pro tunc order, correcting trial judge's certificate to bill of exceptions, *held* proper, and bill sufficiently certified, under Circuit Court of Appeals rule 10, § 2.

2. **Exceptions, bill of ⊚⇒59(4)—Nunc pro tunc order may be entered after expiration of term, amending insufficient certificate to bill of exceptions.**

A nunc pro tunc order may be entered, after the term has expired, amending an insufficient certificate to a bill of exceptions.

3. **Exceptions, bill of ⊚⇒59(1)—Nunc pro tunc order, to make certificate to bill of exceptions explicitly state that it contained all evidence, held warranted.**

Nunc pro tunc order, amending certificate to bill of exceptions to make it explicitly state that certificate contained all evidence, *held* warranted.

4. **Exceptions, bill of ⊚⇒59(1)—Nunc pro tunc order, correcting certificate to bill of exceptions, may be based entirely on recollection of trial judge.**

Nunc pro tunc order, amending certificate to bill of exceptions, while ordinarily based on minutes of clerk, notes of judge, or other official documentary evidence, may be based entirely on recollection of trial judge.

5. **Sales ⊚⇒404—Buyer, discovering that sugar is not as represented, may rescind contract, or retain sugar and sue for damages.**

Buyer of sugar, on discovering that it is not as represented, has an election of remedies, either to rescind the contract, or to retain the sugar and sue for damages.

6. **Sales ⊚⇒89—Buyer's agreement not to rescind for breach of warranty held sufficient consideration for seller's promise to adjust.**

Buyer's agreement not to rescind contract for breach of warranty as to sugar purchased *held* sufficient consideration for seller's promise to adjust the matter satisfactorily to buyer.

7. **Sales ⊚⇒442(4)—Difference in values of sugar as represented and as delivered at place of delivery held measure of damages, in view of particular facts.**

Where seller of sugar, which was not as warranted, knowing the sugar was in Minnesota and that Minnesota retailers were to be placated, agreed to adjust matter satifactorily to buyer, *held*, difference in Minnesota values of the sugar as represented and as delivered was measure of damages.

8. **Appeal and error ⊚⇒1064(1)—Error, if any, in measuring damages for breach of warranty in sale of sugar by market values at place of delivery, held not prejudicial.**

In action for damages for breach of warranty in sale of sugar, error, if any, in measuring damages by market values at place of delivery, *held* not prejudicial; the market values of such commodity being substantially uniform, except for freight rates.

9. **Sales ⊚⇒442(1)—In action for breach of warranty in sale of commodity having no market value, parties have wide range of inquiry as to value.**

If commodity sold be one for which there is no market value, parties are given much wider range of inquiry to ascertain its value in action for breach of warranty.

10. **Evidence ⊚⇒543(4)—Retail dealers held properly permitted to testify as to value of sugar in action for breach of warranty.**

In action for breach of warranty in sale of sugar, retailers thereof *held* properly permitted to testify as to its value, in view of their experience in handling such commodity.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by the Northern Jobbing Company against Arthur H. Lamborn and others. Judgment for plaintiff, and defendants bring error. Affirmed.

Walter L. Fisher, of Chicago, Ill., for plaintiffs in error.

Carlos S. Andrews, of Chicago, Ill., for defendant in error.

Before ALSCHULER, EVANS, and ANDERSON, Circuit Judges.

EVAN A. EVANS, Circuit Judge. This action was brought to recover damages for breach of warranty in the sale of 15,000 bags, 100 pounds each, of fine granulated sugar. A general verdict in favor of the plaintiff for $46,200 was followed by the entry of a judgment for this sum. The only assignment of error argued involves the court's ruling upon the measure of damage.

Defendant's theory was that its liability, if any existed, was limited to the difference in the New York market value of sugar as represented and the sugar actually delivered. Plaintiff, while accepting this rule as a general one, insisted that an exception thereto governed, and it was entitled to recover the difference in the Minnesota market value of the sugar as represented and the sugar delivered. The court accepted plaintiff's view, and let the jury decide whether the exception to the rule applied.

The unusual circumstances which called for the application of the exception to the rule grew out of the following facts. In plaintiff's negotiations with defendants' broker for the purchase and delivery of this sugar in New York, a price was quoted by the

broker, who then was advised that the plaintiff would go to Minnesota and solicit the retail trade for orders; and, unless the necessary orders could be obtained in Minnesota, no sugar would be purchased. Thereafter plaintiff solicited the orders in Minnesota, and, being successful, placed its order for the 1,500,000 pounds of sugar before mentioned, which sugar was thereupon shipped to Minnesota.

Both the authority of the broker to bind the seller and the understanding between the broker and the buyer respecting the Minnesota orders were controverted issues of fact, as well as of law. Defendants insist the court erred in submitting these issues to the jury.

Several reasons are advanced by plaintiff in support of the judgment rendered. Only two of them, however, need be considered: (a) The circumstances, peculiar to this case, which arose when the sugar was delivered to the retail merchants in Minnesota. (b) The evidence showing the error, if any, was not prejudicial.

[1] Plaintiff also insists that defendants' bill of exceptions (due to the insufficient certificate of the trial judge) does not permit of the presentation of this question. Defendants, while admitting the original certificate is insufficient under our rule 10, section 2, call our attention to a subsequent order of the trial judge, made after the term at which judgment was entered. It reads:

"Now, therefore, it is hereby ordered that the said last paragraph or certificate be amended, so as to state the truth as to what the bill of exceptions did then and does now contain, and that it be and hereby is amended to read as follows: 'And forasmuch as the matters above set forth do not fully appear of record, the defendants tender this their bill of exceptions, and pray that the same may be signed by the judge of this court pursuant to the statute in such case made, which is done accordingly this 26th day of May, A. D. 1926; the foregoing being all of the evidence relative to the issues whether the damages be based and determined upon the markets or values in New York City or be based upon the markets or values at the destination of the cars.' "

[2] To what extent, and when, the certificate to the bill of exceptions may be amended, has been a vexatious question before this as well as many other courts. We have heretofore held that a nunc pro tunc order may be entered, after the term has expired, amending an insufficient certificate to the bill of exceptions. Brown v. United States (C. C. A.) 196 F. 351.

[3, 4] Whether the facts in the given case justify the district judge in entering such an order is for that court to determine. While ordinarily the basis for amendment must be found in the minutes of the clerk, the notes of the judge, or other official documentary evidence, the dictum in the above-cited case is to the effect that a nunc pro tunc order may be based entirely on the recollection of the trial judge. Such a holding seems logical, in view of the fact that the court is merely making a record of a prior judicial act, which, through negligence, oversight, or misunderstanding, is either not recorded or is erroneously entered.

In the instant case there is no occasion for going so far, for here a record, an incomplete certificate, duly and timely signed, appears. But the District Judge, in his order, says that "inadvertently and by mistake the certificate did not explicitly so state." There being a certificate, duly and timely signed, which did not record the facts as the court had found them, a proper case for a nunc pro tunc order arose.

The bill of exceptions was prepared in accordance with our rule 10. Defendants' counsel have very successfully and satisfactorily condensed the testimony. Both counsel labored to accomplish this result, and their efforts are to be commended. While the judge's recital of "inadvertence and mistake" in correctly expressing his order is sufficient to justify the nunc pro tunc order, it is apparent both counsel understood that such a certificate as the judge made in his nunc pro tunc order was the aim and object of both counsel in the first instance.

The question being properly and adequately presented, it becomes necessary for us to consider the two aforementioned reasons for affirming the judgment:

(a) Defendants delivered this sugar to the plaintiff's customers in various Minnesota towns. Plaintiff never had an opportunity to inspect the merchandise in New York, and neither it nor its purchasers discovered its condition until it reached Minnesota. Immediately upon its delivery, the retailers made vigorous protests, and the complaints were submitted by the plaintiff to defendants. Defendants' representative gave assurance to plaintiff, saying, among other things: "If there was anything wrong with the sugar, they would adjust the matter entirely satisfactorily to us, and * * * would suggest that we go ahead and have the

merchants use the sugar up, and send the samples, which I done."

[5] Upon plaintiff's discovery that the sugar was not as represented, it had an election of remedies. It could have rescinded the contract, or it could have retained the sugar and sued for damages. Before making any election, it in good faith made known to the defendants the condition of the goods sold, and defendants in equal good faith, and doubtless desirous of avoiding a rescission, urged the plaintiff to retain the sugar, offering in consideration thereof "to adjust the matter entirely satisfactory to the plaintiff."

[6] In other words, plaintiff's agreement not to rescind (to forego one of its remedies) was a sufficient consideration to support defendant's promise "to adjust the matter satisfactorily to plaintiff." The term "satisfactorily to plaintiff" was there used, knowing and understanding that the sugar was in Minnesota and that Minnesota retailers were to be placated. This could only be done by allowing them credits which represented the differences in Minnesota values of the sugar as represented and the sugar delivered.

[7] Under these circumstances, the plaintiff's damage was the difference in Minnesota values of the sugar as represented and the sugar delivered.

[8] (b) But were we to assume this measure of damage to be erroneous, the query arises: Were defendants prejudiced by having the Minnesota values, rather than the New York values, applied? We think not.

It is doubtless true that market value as to many articles varies in different places, and this variance, no doubt, was more noticeable and more marked a few generations back, when means of communication and transportation were not as swift or as adequate as they are to-day. This difference in market values, no doubt, is what led to the pronouncement of the rule which fixes the place of delivery ordinarily as the place where the market value (for the purpose of measuring damages) is to be ascertained.

However, it is apparent to the court, without any evidence, that the difference in market values between two places in the United States is negligible, particularly as to certain articles. Take, for example, the price of wheat, cotton, corn, and many other staple articles, including granulated sugar. Communication is so swift, and transportation facilities so rapid, that there is no difference (other than transportation costs) in prices of these various commodities.

But we are not required to take judicial notice of this fact. Defendants' witness testified that he kept himself informed on the market value of the different kinds of sugar. He said it was possible in 1920, and it is possible now, to determine the price in wholesale quantities in other places, knowing the New York price. He said the price is determined by the New York price, to which is added the prevailing freight rate to point of destination. In other words, in Winona, Minn., there was a wholesale market for sugar of the character here sold. That Winona wholesale price was the New York price, plus freight.

[9] If it be contended that the sugar actually delivered, due to defective or insufficient refining, was of a character or quality for which there was no market value, defendants' position is not improved; for the rule is well established that, if the commodity be one for which there is no market value, the parties are given a much wider range of inquiry to ascertain its value.

[10] In the present case, numerous retailers were produced, and examined and cross-examined, to ascertain the extent of the imperfection of the sugar, and testified as to its value. In view of their experience in handling sugar, we conclude there was no error in receiving their testimony as to its value.

The judgment is affirmed.