## PROECHEL v. UNITED STATES.
### No. 9263.

Circuit Court of Appeals, Eighth Circuit.

June 16, 1932.

Rehearing Denied Aug. 4, 1932.

Marshall S. Snyder, of Minneapolis, Minn. (R. E. Plankerton, of Minneapolis, Minn., on the brief), for appellant.

Joseph W. Finley, Asst. U. S. Atty., of St. Paul, Minn. (Lewis L. Drill, U. S. Atty., of St. Paul, Minn., and John H. Fraine, Ins. Atty., United States Veterans' Bureau, of Minneapolis, Minn., on the brief), for the United States.

Before STONE and KENYON, Circuit Judges, and OTIS, District Judge.

OTIS, District Judge.

This is an appeal from a judgment for the United States in an action brought by appellant, plaintiff in the District Court and herein called the plaintiff, on a contract of war risk insurance. At the trial the sole issue was whether the insured (the plaintiff, his mother, sued as administratrix of his estate and also as beneficiary) was totally and permanently disabled from arthritis on September 27, 1919, the date of his discharge from the Navy. At the close of all the testimony, the court directed a verdict for defendant, appellee here, on the theory that there was no substantial evidence of such total and permanent disability.

Six assignments of error are urged on this appeal. Two (the second and sixth) essentially are identical. They refer to the action of the District Court in sustaining the motion for a directed verdict. The first assignment refers to an amendment of the bill of exceptions ordered by the District Court. The third, fourth, and fifth assignments concern matters of evidence.

Evidence was received which tended to establish facts as follows: (1) That the insured was discharged from the Navy on a surgeon's certificate of disability September 27, 1919; (2) that he was then afflicted with arthritis of gonorrheal origin; (3) that he died September 8, 1922, from a disease not related to, nor caused by, his arthritis; (4) that certain of the joints of his body, particularly his ankles and one knee, more or less continuously until his death were swollen and seats of pain and soreness on account of which he had difficulty in walking, and did walk with a dragging, sliding movement of his feet; (5) that he worked for short periods (the longest was four months), but by reason of his ailment never carried the full burden of his employments; (6) that normally arthritis of that type with which the insured suffered runs its course as an acute and pain-producing malady in two or three years, and leaves a permanent ankylosis or stiffening of joints, usually one, sometimes two. The testimony which tended to prove these facts was supplemented by that of a physician who had never seen nor examined the insured. Basing his conclusions on the facts testified to by others and exhibits received in evidence, he gave his opinion as to the nature and probable course of insured's disease, and was asked for his opinion as to whether on September 27, 1919, he was totally and permanently disabled. As to that, his opinion, as it was developed through his testimony and stated finally (on direct examination he had said, without qualification, that insured in his opinion was totally and permanently disabled), was that the insured was totally and permanently disabled for continuously carrying on any substantially gainful occupation requiring the action of knees and ankles, but that he was not totally and permanently disabled for continuously carrying on any other substantially gainful occupation, provided he was fitted for it by training and mentality. There was no showing that the insured was mentally subnormal or lacking either in ability or opportunity for training. Evidence that he declined vocational training tendered him by the government was not contradicted.

In the manner most favorable to the plaintiff, the foregoing summarizes the case presented to the District Court at the close of all the testimony when the defendant moved for a directed verdict. Whether that motion rightly was sustained is the principal question presented. Before that question is considered, we pass on the assignments which concern the exclusion and admission of evidence.

█ 1. Before his entry into the naval service, the insured had done some work in a bakery shop. In connection with proof of that fact, plaintiff sought to show how long he had so worked and that he had so worked continuously and successfully. The proffered testimony was excluded as immaterial. This, it is urged, was error.

It is scarcely arguable but that the District Court ruled rightly. It is said the proffered proof related to the experience, schooling, and training of the insured. Undoubtedly it is competent in a war risk insurance case to show the lack of experience, schooling, and training of the insured, since that may be considered in determining whether it is or is not possible for him to engage in certain substantially gainful employments. An illiterate man, for example, cannot do a bookkeeper's work. So illiteracy may be proved. Again, for example, it may be proved that an insured has had no training except as a farm hand. That would have

some bearing on his ability, for instance, to sell life insurance. But proof that this insured worked successfully and continuously in a bakery shop would neither have proved nor have tended to prove that he had no ability to do work of some other character nor that he was unfitted for any other substantially gainful occupation.

We have said it is competent in these cases to show lack of experience, schooling, and training, but we would not be understood as saying that one who by reason of disease, as, for example, arthritis, is permanently and totally disabled from working as a baker or at some other employment requiring heavy physical labor, and who has had no experience, schooling, and training which would presently qualify him for lighter physical or for mental work, is, by reason alone of such lack of experience, schooling, and training, necessarily to be found totally and permanently disabled for those substantially gainful occupations which require experience or schooling or training. One whose physical handicap permanently prevents his continuance in the occupation of baking bread may not have the training which will enable him this year or next year to fill a bookkeeper's job, but, unless he is mentally deficient or so circumstanced that opportunity for training is denied him, he can acquire the necessary training so that year after next no longer can it be said that by reason of his physical handicap he cannot continuously carry on a substantially gainful occupation. The government insured its soldiers and sailors only against becoming totally and permanently disabled by reason of mental or physical impairment, and not against the consequences of apathy, lethargy, idleness, and neglect of opportunity.

By way of illustration, let us suppose two youths entered the military service. They were mentally equally endowed, had only a grade school education, and with no experience except as farm hands. Each contracted a disease that resulted in the permanent ankylosis of the joints of his ankles so that no longer could he do a farmer's work. Opportunity for training for other work was offered them. One grasped that opportunity and made of himself a lawyer. The other rejected the opportunity, perhaps (as within common knowledge many times has happened) fearing he would overcome his handicap and so lose the privilege he prizes of living without toil. The first wished to and did overcome the handicap of ankylosis. The second cherished and preserved it as capital from which through life he might draw divi-

dends. Both had contracts of war risk insurance. The first certainly cannot prove that by reason of his handicap it is now impossible for him continuously to carry on a substantially gainful employment. All the second can prove is that, by reason of his handicap and his refusal to overcome it, it is now impossible for him to earn a living by his own efforts in any trade or occupation. The second can no more make out a case than could the first.

When the reliance of an insured is on a disease of the body of such a nature as that it does not necessarily disqualify him permanently for all occupations whatever, it is competent for him to prove his lack of experience, schooling, and training as having relevancy to his ability to carry on any substantially gainful occupation, but he has the burden also of showing either lack of mental capacity or of opportunity or of both to acquire such training as would fit him for some reasonably remunerative employment.

2. A witness who had opportunity to and did observe the insured immediately after his discharge from the Navy, and who had testified that she observed him limping and that his ankles were swollen, was asked: "Q. Now, did he complain of any pains in any other parts of his body; by that, I mean of present pains that he had at that time—not that he told about pains that he had previously."

An objection to this question was sustained. Plaintiff challenges this ruling.

It was clearly proper to prove by any competent testimony that the insured suffered pain growing out of his arthritis. Moreover, there is no question that "the declarations of a party himself, to whomsoever made, are competent evidence, when confined strictly to such complaints * * * as furnish evidence of a present, existing pain * * * to prove his * * * pains." Northern Pacific Railroad v. Urlin, 158 U. S. 271, 275, 15 S. Ct. 840, 842, 39 L. Ed. 977. Such complaints to be admissible must indeed be of the nature of spontaneous utterances—"the facts talking through the party," not "the party talking about the facts." 22 Corpus Juris, 461. Under this rule, the question asked the witness was a proper one. It did not call for hearsay, and the objection on that ground should not have been sustained.

But the ruling of the District Court sustaining the objection was followed by no offer of proof, so that it is impossible now to say that the sustaining of the objection in any way prejudiced the plaintiff. Al-

though it was error to sustain the objection, and not the less so because there was no offer of proof (Buckstaff v. Russell, 151 U. S. 626, 636, 14 S. Ct. 448, 38 L. Ed. 292), since the Act of February 26, 1919, title 28, § 391, U. S. C. (28 USCA § 391), the burden is on him asserting error to show the error was prejudicial. Hall v. United States (8 C. C. A.) 277 F. 19, 23; Rich v. United States (8 C. C. A.) 271 F. 566, 570. Where the reviewing court is left in doubt, as it is here, as to what the answer of the witness would have been, the burden of showing prejudice has not been sustained. Haussener v. United States (8 C. C. A.) 4 F.(2d) 884, 887; Briggs v. Chicago & N. W. Ry. Co. (8 C. C. A.) 125 F. 745, 748.

For still another reason this error was not prejudicial. Assuming the witness had answered the question in the affirmative, and had related the complaints of present pain made by the insured, the fact that he did suffer pain was otherwise fully proved. Several witnesses, without objection, testified to his complaints of pain. Several testified that joints of his body were swollen and inflamed from which necessarily it would be inferred that he did suffer pain. An error in excluding evidence as to a certain fact is harmless where the fact is established by other evidence. USCA title 28, § 391, note 125; Repauno Chemical Co. v. Hardware Co. et al. (8 C. C. A.) 101 F. 948, 950; Northern Pacific R. Co. v. Mortenson (8 C. C. A.) 63 F. 530, 532.

And there is yet another reason for holding this error harmless. Proof of present pains suffered by the insured at the time of his discharge from the Navy, although relevant to the issue of his then disability, bore only on his disability as of that time and on the nature of the malady with which he was afflicted. It indicated nothing touching the permanency of his condition, but, as we shall see, it was failure of proof as to that essential element of plaintiff's case that eventuated in the directed verdict. No quantity of proof as to pains suffered at a given time by the insured would have supplied the missing essential in the case nor changed the ultimate result.

3. The assignment next considered concerns a question which was asked on cross-examination of a witness who was called by and testified for plaintiff. This witness, Dr. Fitzgerald, basing his conclusion on the testimony of other witnesses and exhibits, expressed his opinion as to the nature of the insured's ailment and as to whether he was totally and permanently disabled when discharged from the Navy. The substance of his testimony in these respects has been summarized hereinbefore. He had assumed as the basis of his answer that the insured's arthritis had resulted in ankylosis of certain of his joints, and that there had been a swelling of them, and pain accompanying that swelling for some time following September 27, 1919. He was asked on cross-examination: "Q. Now, Doctor, if, we will say, during the month of April, 1920, this man had no ankylosis of any of his joints, and if he had no swelling in any of his joints at all, and his only complaint was that when he was working and when he stood upon his feet for sometime he had rheumatic pains in his knees and back,—assuming that statement of facts to be true, what would be your opinion as to whether or not he was totally and permanently disabled the preceding October?"

Plaintiff's objection to this question was overruled. The witness answered by saying that, assuming the facts stated, it was his opinion the insured was not totally and permanently disabled in October, 1919.

At the time the question was put, there had as yet been no testimony of the facts assumed. If the facts assumed were supplied by later testimony, as at the time was promised, then it is admitted in plaintiff's brief there was no error in overruling the objection. It is said now, however, that the facts assumed never were put in evidence. But an examination of the record discloses that there was later testimony to each of the facts assumed. There was testimony for the defendant by one of its witnesses, Dr. Liedloff, that he examined the insured in April, 1920; that there was then no ankylosis, no swelling of the joints, and no complaints of then present pain in any of the joints. When assurance was given that such facts would be supplied by later testimony, it was proper to overrule the objection to the question asked. 11 R. C. L. 585. If there had been failure to produce the promised testimony, the proper course would have been a motion to strike out. There was no such motion to strike out, doubtless because at the trial plaintiff's counsel fully realized that the promised testimony had been supplied.

It is contended by plaintiff now that one of the assumptions of the hypothetical question was not supplied by Dr. Liedloff's testimony. The hypothetical question assumed that the insured had no swelling in any of his joints in April, 1920. Plaintiff's contention is based on a question and answer in

the cross-examination of Dr. Liedloff, as first transcribed, to the question: "I believe you said that there was a certain amount of swelling and stiffness in his right knee?" In the first transcription the answer appeared as, "Yes, sir." Later, however, on the affidavit of the reporter, and by order of the District Court, the answer was changed from, "Yes, sir," to "No." If the answer was "No," as the whole context of Dr. Liedloff's testimony shows conclusively, as the court reporter's affidavit stated the truth was, and as the District Court determined, then the whole foundation of the plaintiff's contention in this regard is swept away. A separate assignment of error (the first assignment) concerns the order of the District Court correcting the bill of exceptions so as to show that the answer, "No," was made where the answer, "Yes, sir," first was given in the transcript of the testimony. Undoubtedly the District Court acted within its power. Lamborn v. Northern Jobbing Co. (7 C. C. A.) 15 F.(2d) 897, 898. We find no merit in the assignment and hence no merit in the contention that the facts assumed in the hypothetical question were not testified to as it was promised they would be.

 4. It was not error to sustain the motion for a directed verdict. The burden was on the plaintiff to prove, first, that on September 27, 1919, the insured was suffering from that bodily impairment alleged in the petition; second, that by reason of that impairment the insured was on September 27, 1919, totally disabled, that is, that it was then impossible for him continuously to carry on a substantially gainful occupation; third, that the conditions totally disabling the insured on September 27, 1919, were reasonably certain to continue throughout his life with the same totally disabling effect on his ability to work. If there was not substantial evidence tending to prove each of these several elements of her case, then plaintiff did not make a case which should have been submitted to the jury.

Substantial evidence there was of the first two of these three elements. There was evidence tending to prove insured was suffering from arthritis when he was discharged from service. There was evidence which would have supported a finding that he was then unable continuously to carry on any substantially gainful occupation. But there was no evidence tending to prove his then total disability was permanent.

 It was sought to prove the third essential of plaintiff's case by a physician's testimony that in his opinion the insured was totally and permanently disabled, but, as we have pointed out, on cross-examination, in effect, he retracted that opinion, leaving no foundation for a finding that was indispensable. Viewed in the light most favorable to the plaintiff, the evidence did not prove that the insured was permanently incapacited from carrying on continuously any substantially gainful occupation not requiring free use of knees and ankles. There are such occupations. There was no showing that the insured was wanting in capacity to follow them or inability or opportunity to acquire training necessary to follow them or some one of them. One who would prove permanent total disability must prove there is that in the nature of the impairment causing disability, which, considering the capacity of the individual, will make it impossible for him through the probable duration of his life ever continuously to carry on any substantially gainful occupation. The element of permanency and all the elements essential to make a case must be proved. They cannot be found by speculation, guess, or surmise. United States v. Le Duc (8 C. C. A.) 48 F. (2d) 789, 793. In this case there was failure of any evidence tending to prove permanency of total disability. Compare Nicolay v. United States (10 C. C. A.) 51 F. (2d) 170; United States v. Thomas (4 C. C. A.) 53 F.(2d) 192.

 It is true that the insured died in less than three years from the date of his discharge, and that a jury might have been warranted in finding that, while he lived, he was totally disabled within the meaning of the accepted definition. But his death did not result from the bodily impairment which caused his disability. The fact of death, a death resulting from a cause unrelated to the alleged impairment, is no more to be considered in determining whether the total disability of September 27, 1919, was permanent than if he had been killed in an automobile collision or suffered death from a stroke of lightning. It was for plaintiff to present substantial proof that the total disability existing on September 27, 1919, was founded on conditions then existing which rendered it reasonably certain on that date that the then total disability would continue throughout the life of the insured. The finding of permanency must be based on conditions existing before lapse of the insurance contract, not upon conditions thereafter coming into existence.

The judgment of the District Court should be, and is, affirmed.