442

See, also, 77 F.(2d) 446.

Geo. H. Rummens, Tracy E. Griffin, and Attwood A. Kirby, all of Seattle, Wash., for appellant Patrick.

H. E. T. Herman and Richard S. Munter, both of Spokane, Wash., and William Clapp, of Ephrata, Wash., for appellant Nixon.

J. M. Simpson, U. S. Atty., and S. R. Clegg, Asst. U. S. Atty., both of Spokane, Wash.

Before WILBUR, GARRECHT, and DENMAN, Circuit Judges.

WILBUR, Circuit Judge.

The appellants were indicted for using the mails to defraud, for misapplication of the funds of a national bank, for making false entries in the books of a national bank, and for making false statements and representations and overvaluing securities for the purpose of obtaining a loan from the Reconstruction Finance Corporation in violation of 18 USCA § 338, 12 USCA § 592, and 15 USCA § 616 (a). The indictment contains ten counts. Both appellants were convicted on six counts. The appellant Paul Patrick was sentenced to five years on each of five counts and two years on another, to run concurrently, and fined $500 on each of five counts. Appellant Nixon was sentenced to one year and one day on each count, sentences to run concurrently.

The charges grew out of the use of fraudulent warehouse receipts as security for notes executed by dummies as an accommodation for appellant Patrick. Appellant Patrick was the owner and manager of three warehouses used for the storage of wheat, which were operated under the fictitious name of Fred Schwab Commission Company. In January of 1932 appellant Patrick issued a negotiable warehouse receipt calling for 5,515 bushels of wheat to his brother, Gordon D. Patrick, who executed a negotiable promissory note in the sum of $1,790.26 payable to the First National Bank of Ephrata, hereinafter referred to as the First National Bank. This warehouse receipt was indorsed by Gordon D. Patrick, and, together with the note retained by appellant Patrick, was included as an asset in the application for a loan by the First National Bank to the Reconstruction Finance Corporation. Later appellant Patrick became president of the First National Bank and thereafter this same note and warehouse receipt were used in support of a second application for a loan from the Reconstruction Finance Corporation, which application was signed by Paul Patrick as president and L. A. Nixon as cashier of the First National Bank. This note

was due on August 15, 1932, at which time a new note was executed by Gordon D. Patrick in the same amount payable to the First National Bank and a new negotiable warehouse receipt on the Fred Schwab Commission Company was issued to Gordon D. Patrick by appellant Patrick, and indorsed by Gordon D. Patrick. This note supported by the negotiable warehouse receipt was included in an offering for discount mailed to the Federal Reserve Bank at Spokane, Wash., from the First National Bank and was accepted by the Federal Reserve Bank of Spokane, Wash. During the month of October, 1932, negotiable warehouse receipts were issued by appellant Patrick to two employees of the Fred Schwab Commission Company purporting to cover grain held in storage for them and these two employees executed negotiable promissory notes payable to the First National Bank. These two promissory notes supported by the indorsed negotiable warehouse receipts were used by appellant Patrick to obtain a loan from the First National Bank and in turn were discounted by the First National Bank with the Federal Reserve Bank in Spokane, Wash. It appears from the evidence at the time of the transactions above referred to that neither Gordon D. Patrick, nor the two employees of the Fred Schwab Commission Company either had any wheat deposited in the warehouses or were indebted to the First National Bank or to appellant Patrick and that they acted as dummies for appellant Patrick.

These note transactions are the basis of the charges in the indictment. The foundation of the charges is the claim by the government that there was no wheat belonging to appellant Patrick in the warehouse at the time and that the warehouse receipts were therefore fraudulent. Appellant Patrick contends that the evidence is insufficient to show that he did not own sufficient Baart wheat to cover the warehouse receipts. He claims also that most of the wheat received in his warehouses had been delivered by farmers to whom he had issued what he denominated "purchase receipts"; that these "purchase receipts" were evidence of sale to him of the wheat thus stored in the warehouse; and that, although he had not paid for such wheat, title was in him and he was therefore authorized to issue negotiable warehouse receipts to another indicating the storage of wheat by the holder in the warehouse. This latter contention turns upon the legal effect of the "purchase receipt."

■ A copy of the form of purchase receipt used by the appellant Patrick is set out in the recent opinion of the Supreme Court of Washington in Barnes, State Director of Agriculture, v. Patrick, 176 Wash. 142, 28 P.(2d) 293, 295, 91 A. L. R. 901. This warehouse purchase receipt acknowledged the amount of wheat delivered, and contained the following: "The said Fred Schwab Commission Company hereby agrees to pay the seller the cash market value of said wheat upon demand and the surrender of this receipt." As to the claim that this transaction vested title in the appellant, it is sufficient to say that we agree with and follow the decision in Barnes v. Patrick, supra, in which the Supreme Court of Washington held that the transaction was not a sale but a bailment. That court said: "The receipt, on its face, could ripen into a contract of sale only by acceptance, on the part of the depositor of the wheat, in accordance with its terms, namely, by calling on the commission company for payment of the market price on a given day and by surrendering the receipt."

The trial judge instructed the jury in accordance with Barnes v. Patrick, supra, that under the law of Washington the title to the wheat described in the purchase receipt remained in the depositor of the wheat.

This case presents certain procedural difficulties which have been ignored by the parties in their presentation thereof to this court. The first relates to the assignment of errors. Appellant Nixon served notice of appeal April 27, 1934, and on the same day the appeal was allowed by the District Judge. Appellant Patrick's petition for appeal and notice of appeal were filed April 24th and appeal was allowed by the district judge on April 25, 1934. No assignment of errors was filed until August 31, 1934. The bill of exceptions was settled September 14, 1934. On April 25, 1934, appellant Patrick was granted additional time to prepare his assignments of error and by order of July 6th this time was extended to September 1, 1934. Similar extensions were granted to appellant Nixon, the first order dated on the date the appeal was allowed and subsequent orders extended time until the assignments were filed September 1, 1934.

■ Our rule 11 requires that the assignment of errors be filed with the petition for appeal and for failure so to do the appeal

may be dismissed. Board of Com'rs v. U. S. (C. C. A.) 64 F.(2d) 775, 776. In that case it is stated: "The appeal was granted April 4, 1932. The assignment of errors was not filed until April 8, 1932. This was a plain violation of Rule 11 of this court. The United States has moved to dismiss on that ground. The motion should be granted, unless there is a plain and serious error which the court should notice without an assignment thereof." E. R. Squibb & Sons v. Mallinckrodt Chemical Works, 293 U. S. 190, 55 S. Ct. 135, 79 L. Ed. —.

The filing of the assignments of error with the notice of appeal, however, is not jurisdictional and notwithstanding the failure to file such assignments this court may, in case of plain error and in furtherance of justice, consider an error shown by the bill of exceptions though not assigned. Board of Comm'rs of Osage County v. U. S. (C. C. A.) 64 F.(2d) 775, supra.

■ One of the main points relied upon by the appellants is the insufficiency of the evidence to sustain the verdicts. This question can only be properly raised by a bill of exceptions which contains all of the evidence in the case in substance and effect according to the rule for the settlement of the bill of exceptions. See Kraus Bros., etc., v. Mellon, 276 U. S. 386, 48 S. Ct. 358, 72 L. Ed. 620; Hall v. U. S. (C. C. A.) 48 F.(2d) 66; Cyc. of Fed. Practice and Procedure, vol. 6, p. 264, § 2811.

■ We have examined the bill of exceptions notwithstanding the absence of a timely assignment of errors and find that the evidence contained therein is sufficient to sustain the conviction of appellant Patrick. With reference to the appellant Nixon, there is an entire absence of incriminatory testimony. He participated in the applications for loans from the Reconstruction Finance Corporation and in the discounting of the notes with the Federal Reserve Bank of Spokane, Wash., but there is no evidence that he did so with knowledge of the fraudulent character of the warehouse receipts.

■ The bill of exceptions in the case at bar is certified by the trial judge as follows: "This and the foregoing 91 pages are hereby settled and certified as the bill of exceptions upon appeal in this case." It has been held by the Supreme Court and by this court that it may be inferred from the bill of exceptions that it contains all of the evidence notwithstanding the failure to expressly so certify. Board of Com'rs of Gunnison County v. E. H. Rollins & Sons, 173 U. S. 255, 262, 19 S. Ct. 390, 43 L. Ed. 689. There is nothing in the bill of exceptions nor in the certificate of the trial judge settling the same to justify the inference that the bill of exceptions contains all of the evidence. However, appellants claim that the bill of exceptions does contain all of the evidence introduced at the trial and have submitted a petition to this court to return the bill of exceptions for certification to that effect by the trial judge. In view of the fact that the trial judge may have so intended, we will grant the motion as to appellant Nixon and afford an opportunity, upon application to the district judge, for a nunc pro tunc order amending the certificate to the bill to conform to the intention of the trial judge at the time the bill was settled. If it was the intention to certify that the bill of exceptions contains a statement of all the evidence condensed as required by the rules of court, that fact should be stated in the amended certificate. We do not hold that such an order should be granted, as that matter is left to the decision of the trial judge. See Proechel v. U. S. (C. C. A.) 59 F.(2d) 648; Lamborn v. Northern Jobbing Co. (C. C. A.) 15 F.(2d) 897; Rollins v. Board of Comm'rs of Gunnison County (C. C. A.) 78 F. 741.

The judgment will be affirmed as to appellant Patrick and as to appellant Nixon the submission will be vacated and he will be given an opportunity to apply for a nunc pro tunc order within ten days as herein indicated.