## CHEVILLARD et al. v. UNITED STATES.

### No. 11018.

Circuit Court of Appeals, Ninth Circuit.

June 12, 1946.

Rehearing Denied July 16, 1946.

Leo R. Friedman, of San Francisco, Cal., for appellants.

Theron Lamar Caudle, Asst. Atty. Gen., James W. Knapp and Roscoe T. Pile, Attys., Department of Justice, both of Washington, D.C., and Frank J. Hennessy, U. S. Atty., of San Francisco, Cal., for appellee.

Before GARRECHT, MATHEWS and HEALY, Circuit Judges.

MATHEWS, Circuit Judge.

Appellants (Fernand Chevillard and George Patron) and others[1] were indicted in three counts. Appellants demurred to the indictment and to each count thereof on the ground that no count thereof charged an offense. The demurrer was overruled. Appellants pleaded not guilty and were tried. At the close of all the evidence, they moved for a directed verdict of acquittal. The motion was denied. Appellants were acquitted on count 1, were convicted and sentenced on counts 2 and 3, and on March 19, 1945, took this appeal.

Appellants assign as error[2] the overruling of the demurrer to counts 2 and 3. Count 2 was based on § 35(A) of the Criminal Code, 18 U.S.C.A. § 80, which provides: "Whoever shall make or cause to be made or present or cause to be presented, for payment or approval, to or by any person or officer in the civil, military, or naval service of the United States, or any department thereof, * * * any claim upon or against the Government of the United States, or any department or officer thereof, * * * knowing such claim to be false, fictitious, or fraudulent; or whoever shall knowingly and willfully falsify or conceal or cover up by any trick,

[1] Julio Rodriguez, Pierre Francois Barral, Clarence Valentine Jacky, Lucien L. DeAngury and Angelo Italo Vincenzini.

[2] At all pertinent times, Rules 8 and 9 of the Rules of Criminal Procedure after Plea of Guilty, Verdict or Finding of Guilt, 18 U.S.C.A. following section 688, provided that, in criminal cases, the appellant should file with the clerk of the trial court an assignment of errors, and Rule 2(a) of our rules governing criminal appeals provided that "The appellant shall file with the clerk of the trial court an assignment of errors, numbering each, and shall set out separately and particularly each error asserted and intended to be urged."

scheme, or device a material fact, or make or cause to be made any false or fraudulent statements or representations, * * * in any matter within the jurisdiction of any department or agency of the United States * * * shall be fined not more than $10,000 or imprisoned not more than ten years, or both."

Count 2 charged that on January 23, 1945, in Oakland, California, appellants and their codefendants "did knowingly, wilfully, unlawfully, and feloniously cover up and conceal by a trick, scheme, and device a material fact within the jurisdiction of the War Shipping Administration, a department and agency of the United States of America, the material facts so covered up and concealed * * * being as follows:

"That the said defendants [appellants and their codefendants], well knowing * * * that the said War Shipping Administration had ordered from the Ed Heuck Company of San Francisco * * * approximately 64,793 pounds of meat, to be delivered by the said Ed Heuck Company to the said War Shipping Administration, diverted and withheld from said shipment approximately 17,832 pounds of said meat with the intent and for the purpose of converting the same to their own use, and with intent to defraud the said War Shipping Administration covered up and concealed said material fact of said diversion and conversion by the said defendants * * * by the trick, scheme, and device of signing and causing to be signed, and issuing and causing to be issued by the said War Shipping Administration, a receipt to the said Ed Heuck Company for approximately 64,793 pounds of meat."

◼ Thus count 2 charged an offense under § 35(A) of the Criminal Code, 18 U.S.C.A. § 80, namely, the offense of know-

ingly and wilfully concealing or covering up by a trick, scheme or device a material fact in a matter within the jurisdiction of a department or agency of the United States. It did not use the words "in a matter within the jurisdiction of a department or agency of the United States," but it stated facts which showed that the concealing and covering up occurred in such a matter. Hence failure to use the quoted words was not a fatal defect.[3]

◼ Appellants say that count 2 did not allege "that defendants wrote and presented the receipt,[4] or that such receipt was to be used as a predicate for a false bill or claim against the United States;" did not allege "the doing of any act on the part of defendants whereby they prepared any false receipt or document to be presented to the War Shipping Administration"; did not allege "that either appellant, or any defendant, was an officer, agent or employee of the War Shipping Administration," or "that the War Shipping Administration did not receive the total amount of meat ordered";[5] and did not allege "how the issuance of a receipt by the War Shipping Administration could result in any defrauding of the United States," or how such a receipt "could conceal the fact that 17,000 pounds of meat were missing from the shipment."[6] Such allegations were unnecessary.

◼ Appellants contend that count 2 was fatally defective because the receipt therein referred to was not set forth in haec verba. There is no merit in this contention. The receipt was sufficiently described in count 2. It was unnecessary to set it forth in haec verba.[7]

Count 3 was based on § 37 of the Criminal Code, 18 U.S.C.A. § 88, which provides: "If two or more persons conspire either to commit any offense against the

---

3 Hagner v. United States, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861; Bost v. United States, 9 Cir., 103 F.2d 717; Olsen v. United States, 2 Cir., 287 F. 85; Musey v. United States, 5 Cir., 37 F.2d 673; Webster v. United States, 8 Cir., 59 F.2d 583, 585; Kotrba v. United States, 7 Cir., 62 F.2d 234; Stumbo v. United States, 6 Cir., 90 F.2d 828; Tatum v. United States, 71 App.D.C. 393, 110 F.2d 555;

Clemons v. United States, 4 Cir., 137 F. 2d 302.

4 The receipt mentioned in count 2.

5 Approximately 64,793 pounds.

6 The shipment mentioned in count 2.

7 Bridgeman v. United States, 9 Cir., 140 F. 577; Austin v. United States, 9 Cir., 19 F.2d 127; Becher v. United States, 2 Cir., 5 F.2d 45.

United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both."

Count 3 charged that on or about January 16, 1945, in San Francisco, California, appellants and their codefendants "did, in violation of [§ 37 of the Criminal Code, 18 U.S.C.A. § 88], unlawfully, wilfully, knowingly, and feloniously conspire, combine, confederate, and agree together, and with divers persons whose names are to the grand jurors unknown, to commit offenses against the United States, to-wit, to defraud the United States in violation of [§ 35(A) of the Criminal Code, 18 U.S. C.A. § 80] in the manner following, to-wit:

"That the said defendants [appellants and their codefendants], * * * knowing that the War Shipping Administration, a department and agency of the United States, had placed a purchase order with the Ed Heuck Company of San Francisco * * * for approximately 64,793 pounds of meat for delivery to the said War Shipping Administration and for its use, conspired, confederated and agreed together to cause the said Ed Heuck Company to present a claim, false in part, to the said War Shipping Administration for payment from said War Shipping Administration for a total amount of 64,793 pounds of meat, when in truth and in fact, as the said defendants and each of them then and there well knew, approximately only 46,961 pounds of meat would actually be delivered to the said War Shipping Administration by the said Ed Heuck Company; and by the said defendants making and causing to be made false statements and representations in a matter within the jurisdiction of the said War Shipping Administration, to wit, that approximately 64,793 pounds of meat had been received by the said War Shipping Administration from the said Ed Heuck Company, when in truth and in fact, as the said defendants and each of them then and there well knew, approximately only 46,961 pounds of meat had actually been delivered to and received by the said

War Shipping Administration; and by the said defendants covering up and concealing by trick, scheme and device a material fact relating to a matter within the jurisdiction of the said War Shipping Administration, * * * said material fact being that the said defendants had diverted to their own use and personal gain approximately 17,832 pounds of meat from a shipment consisting of approximately 64,793 pounds of meat purchased by and intended for the use of said War Shipping Administration from the said Ed Heuck Company, and covered up and concealed said material fact by the trick, scheme and device of signing and causing to be signed, and issuing and causing to be issued by the said War Shipping Administration, a receipt to the said Ed Heuck Company for approximately 64,793 pounds of meat."

Count 3 further charged that, to effect the object of the conspiracy, overt acts, which it described, were done by parties to the conspiracy on or about January 18, 1945, January 22, 1945, and January 23, 1945.

Thus count 3 charged an offense under § 37 of the Criminal Code, 18 U.S. C.A. § 88, namely, the offense of conspiring to commit offenses against the United States and doing acts to effect the object of the conspiracy.

Count 3 purported to charge a conspiracy to commit three offenses—the offense of causing to be presented, for payment, to or by a person or officer in the civil, military or naval service of the United States, or a department thereof, a claim upon or against the Government of the United States, or a department or officer thereof, knowing such claim to be false; the offense of knowingly and wilfully making or causing to be made false statements or representations in a matter within the jurisdiction of a department or agency of the United States; and the offense of knowingly and wilfully concealing or covering up by a trick, scheme or device a material fact in a matter within the jurisdiction of a department or agency of the United States.

Appellants say that, although count 3 purported to charge a conspiracy to com-

mit three offenses, it actually charged a conspiracy to commit only one offense—the offense of knowingly and wilfully making or causing to be made false statements or representations in a matter within the jurisdiction of a department or agency of the United States. Appellants therefore contend that count 3 did not charge an offense. There is no merit in this contention. We think that count 3 charged a conspiracy to commit three offenses. If, however, it charged a conspiracy to commit only one offense, that was sufficient.

We conclude that the demurrer was properly overruled.

Elroy Hinman, general manager of the Ed Heuck Company, was a witness for the Government. On direct examination, he testified that an order for approximately 64,793 pounds of meat was received by the Company from the War Shipping Administration for the steamship Sea Perch in January, 1945; that the meat so ordered was placed on trucks for delivery to the Administration's agent, United Fruit Company; that thereafter, on January 23, 1945, the assistant steward of the Sea Perch, Pierre Francois Barral, one of appellants' codefendants, handed Hinman a paper which Hinman called a delivery receipt [8] showing delivery of "the entire lot of meat ordered for the Sea Perch"; that, actually, one truckload (17,000 pounds) of the meat so ordered was not delivered; and that the receipt which Barral handed to Hinman was the paper from which the Company prepared its "billing" against the Administration.

On cross-examination, Hinman was questioned about the Company's books and, and, in response to such questions, testified: "As manager, I had supervision of the books of the Heuck Company. Our books will contain a record of what was billed against the United Fruit Company, War Shipping Administration, together with the quantity and amount of deliveries that the bill represents. Those books are under my general supervision." Thereupon appellants requested the court to "in-struct" Hinman to produce the books. The court refused to comply with the request. Appellants assign the refusal as error.

No valid reason for requiring production of the books was shown. Such production could not be considered a proper part of Hinman's cross-examination, for the books were not mentioned or referred to in his direct examination.[9] There is no showing as to what facts, if any, appellants expected to prove by the books, or as to the materiality of such facts. Appellants' counsel stated that, "even for the purpose of testing this witness' recollection or even impeaching his testimony, I have a right to see the books that are under his supervision." But counsel did not indicate the matter or matters as to which he desired to test the witness' recollection or to impeach his testimony, nor was there any showing as to the materiality of such matter or matters. We conclude that the court committed no error in refusing to comply with appellants' request.

The Ed Heuck Company was a partnership consisting of Edward L. Heuck, Dean Heuck and A. Pasquini. Dean Heuck was a witness for the Government. On direct examination, he testified that in January, 1945, he "supervised an order of meat for delivery to the steamship Sea Perch"; that the meat was loaded on five trucks; that four truckloads of the meat were delivered; that the fifth truckload (about 17,500 pounds) was not delivered; that he recognized the paper which Hinman called a delivery receipt; [10] and that this receipt "represents the entire order of meat for the Sea Perch—about 64,000 pounds."

On cross-examination, Dean Heuck was asked the following questions: "Who did you bill for the meat? Was your company ever paid for the meat?" The questions were objected to as improper cross-examination. The objection was sustained. Appellants assign this ruling as error.

The questions were improper because they related to matters about which the witness had not testified in his direct ex-

---

[8] He also called it a delivery tag.

[9] Kettenbach v. United States, 9 Cir., 202 F. 377; Farley v. United States, 9 Cir., 269 F. 721; Green v. United States,

[9] Cir., 19 F.2d 850; Aplin v. United States, 9 Cir., 41 F.2d 495.

[10] Dean Heuck called it a delivery bill.

amination—the matter of billing someone for the meat and the matter of obtaining payment therefor.[11] Hence there was no error in sustaining the objection.

Barral pleaded guilty and was sentenced on all counts of the indictment. After pleading guilty and before being sentenced, he testified as a witness for the Government. His testimony on direct examination tended to show that the offenses charged in counts 2 and 3 were committed by appellants and three of their codefendants—Julio Rodriguez, Lucien L. DeAngury and Barral himself.

On cross-examination, Barral was asked and answered many questions. In response to one of these questions, he testified: "I pleaded guilty in this case." He was then asked: "What was it you pleaded guilty to?" This was objected to on the ground that "The indictment speaks for itself." The objection was sustained. Later, in his cross-examination, Barral testified: "I pleaded guilty in this case. I do not know that there are three charges in the indictment. I know that I am in court. That is all I know. * * * I don't know how many charges I pleaded guilty to." He was then asked: "Do you know how long you could be sent to jail?" This was objected to "as improper cross-examination, immaterial, irrelevant and incompetent." The objection was sustained. Appellants assign as error the action of the court in sustaining objections to the two questions last above mentioned, thereby "limiting" the cross-examination.

 The extent to which cross-examination shall be allowed rests in the sound discretion of the court.[12] In the ab-

sence of abuse, the exercise of that discretion is not reviewable.[13] In this case, there was no abuse of discretion.

Chevillard was arrested by agents of the Federal Bureau of Investigation at 1:10 a. m. on January 24, 1945, and remained in their custody until 5:30 a. m., a period of four hours and 20 minutes. While in their custody, he made and signed an incriminating statement—a statement which tended to show that he committed the offenses charged in counts 2 and 3. The Government offered the statement in evidence against Chevillard. Chevillard objected. The objection was overruled, the statement was admitted as against Chevillard, and a motion to strike it was denied. These rulings are assigned as error.

 The grounds of the objection were that the statement was "a mere narrative of past events," and that the corpus delicti had not been established. The statement was not "a mere narrative of past events," but was a statement incriminating Chevillard. As against him, it was not necessary to establish the corpus delicti independently of the statement.[14] The corpus delicti might have been established by the statement itself, plus corroborating evidence.[15] Actually, however, it was established independently of the statement. The objection was properly overruled.

 The ground of the motion to strike was that "the manner in which the statement was procured was a denial of due process of law and in violation of the Fifth Amendment to the Constitution of the United States." The record discloses no such denial or violation. The statement was voluntary, not coerced.[16] The circum-

---

11 See cases cited in footnote 9.

12 Storm v. United States, 94 U.S. 76, 24 L.Ed. 42; Blitz v. United States, 153 U.S. 308, 14 S.Ct. 924, 38 L.Ed. 725; Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Holsman v. United States, 9 Cir., 248 F. 193; Madden v. United States, 9 Cir., 20 F.2d 289; Brady v. United States, 9 Cir., 26 F.2d 400; Girson v. United States, 9 Cir., 88 F.2d 358.

13 See cases cited in footnote 12.

14 Mangum v. United States, 9 Cir., 289 F. 213; Pearlman v. United States, 9 Cir.,

10 F. 460; Wynkoop v. United States, 9 Cir., 22 F.2d 799; Wiggins v. United States, 9 Cir., 64 F.2d 950; Flower v. United States, 5 Cir., 116 F. 241; Naftzger v. United States, 8 Cir., 200 F. 494; Rosenfeld v. United States, 7 Cir., 202 F. 469; Bolland v. United States, 4 Cir., 238 F. 529; Evans v. United States, 10 Cir., 122 F.2d 461; Ercoli v. United States, 76 U.S.App.D.C. 360, 131 F.2d 354; United States v. Kertess, 2 Cir., 139 F.2d 923.

15 See cases cited in footnote 14.

16 Cf. Brown v. Mississippi, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682; Cham-

stances under which it was procured differed widely from those described in McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819; Anderson v. United States, 318 U.S. 350, 63 S.Ct. 599, 87 L.Ed. 829; Gros v. United States, 9 Cir., 136 F.2d 878; and Runnels v. United States, 9 Cir., 138 F.2d 346. The doctrine of United States v. Mitchell, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140, and Brady v. United States, 9 Cir., 148 F.2d 394,[17] rather than that of the McNabb, Anderson, Gros and Runnels cases, is applicable here. The motion to strike was properly denied.

Appellants assign as error the denial of their motion for a directed verdict. By this assignment, appellants raise the question of the sufficiency of the evidence to warrant their conviction. The record does not contain all the evidence. Hence this assignment need not be considered.[18] However, we have considered it and find that, although the record does not contain all the evidence, it contains enough to show that appellants' conviction was amply warranted. The motion for a directed verdict was properly denied.

The court's charge to the jury contained an instruction defining the terms "principal," "aid" and "abet." The giving of this instruction is assigned as error. The objection to it was that it "failed to instruct the jury that before anyone can be found guilty of aiding, abetting, counseling, advising, etc., in a criminal act, in which the party did not in fact commit the act himself, that is, the act which amounts to cooperation, aiding and assisting must be done with a criminal intent, and must be done with the intent of having the ultimate act actually done and accomplished." This was not a well founded objection, for the court had, elsewhere in its charge, sufficiently instructed the jury on the subject of criminal intent.

Appellants assign as error the court's refusal to give the jury two requested instructions—Nos. 3 and 37. Requested instruction No. 3 stated that Barral and DeAngury had pleaded guilty and had testified as witnesses for the Government, and that, in considering their credibility, the jury had a right to consider the fact that they had pleaded guilty and were awaiting sentence. The record does not show that DeAngury was a witness. Even if he was, the requested instruction was properly refused, for the court, in its charge, had sufficiently instructed the jury on the subject of accomplices' testimony.

Requested instruction No. 37 was as follows: "When independent facts and circumstances are relied upon to establish by circumstantial evidence the guilt of a defendant, each material independent fact or circumstance in the chain of facts relied upon must each be established to a moral certainty and beyond a reasonable doubt. If, in the chain of circumstantial evidence, any one or more of the material facts in such chain are not established to a moral certainty and beyond a reasonable doubt, the entire proof fails and a verdict of not guilty must be returned." The requested instruction was properly refused, for the

bers v. Florida, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716; Canty v. Alabama, 309 U.S. 629, 60 S.Ct. 612, 84 L.Ed. 988; White v. Texas, 309 U.S. 631, 60 S.Ct. 706, 84 L.Ed. 989; Id., 310 U.S. 530, 60 S.Ct. 1032, 84 L.Ed. 1342; Lomax v. Texas, 313 U.S. 544, 61 S.Ct. 956, 85 L.Ed. 1511; Vernon v. Alabama, 313 U.S. 547, 61 S.Ct. 1092, 85 L.Ed. 1513; Lisenba v. California, 314 U.S. 219, 62 S.Ct. 280, 86 L.Ed. 166; Hysler v. Florida, 315 U.S. 411, 62 S.Ct. 688, 86 L.Ed. 932; Ward v. Texas, 316 U.S. 547, 62 S.Ct. 1139, 86 L. Ed. 1663; Ashcraft v. Tennessee, 322 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192; Lyons v. Oklahoma, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481; Malinski v. New York, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029; Ashcraft v. Tennessee, 66 S.Ct. 544.

[17] See, also, United States v. Grote, 2 Cir., 140 F.2d 413; United States v. Keegan, 2 Cir., 141 F.2d 248, 249; United States v. Ebeling, 2 Cir., 146 F.2d 254; Mergner v. United States, 79 U.S.App.D. C. 373, 147 F.2d 572; United States v. Heitner, 2 Cir., 149 F.2d 105.

[18] Rasmussen v. United States, 9 Cir., 8 F.2d 948; Smith v. United States, 9 Cir., 9 F.2d 386; Hall v. United States, 9 Cir., 48 F.2d 66; Love v. United States, 9 Cir., 74 F.2d 988; Patrick v. United States, 9 Cir., 77 F.2d 442; DuVall v. United States, 9 Cir., 82 F.2d 382; Lowrance v. United States, 9 Cir., 142 F.2d 192; Conway v. United States, 9 Cir., 142 F.2d 202; Tudor v. United States, 9 Cir., 142 F.2d 206.

court, in its charge, had sufficiently instructed the jury on the subject of circumstantial evidence and reasonable doubt.

Other alleged errors were assigned, but are not urged here and hence are deemed waived.[19]

Judgment affirmed.

[19] Waggoner v. United States, 9 Cir., 113 F.2d 867; Utley v. United States, 9 Cir., 115 F.2d 117; Cornes v. United States, 9 Cir., 119 F.2d 127; Lane v. United States, 9 Cir., 142 F.2d 249; Roedel v. United States, 9 Cir., 145 F.2d 819.